Carroll M. Roberts, J.
This is a motion by defendants to dismiss the complaint pursuant to rule 107 of the Rules of Civil Practice. The motion is based upon the grounds, (1) that there is a final judgment in a related action which constitutes a bar to the present action; (2) that the action is barred by the Statute of Limitations; and (3) as to the claim of the plaintiff, May G. Yawman, individually and as executrix, that said claim has been released.
The lawsuit involves the affairs of Yawman & Erbe Manufacturing Company and the acquisition of stock of this company by the defendant bank and the defendant, Anna M. Wolf.
Yawman & Erbe Manufacturing Company was the outgrowth of a partnership formed many years ago by Philip Yawman and Gustav Erbe. Philip Yawman predeceased Gustav Erbe and was survived by his son, Francis J. Yawman. Gustav Erbe died in 1931, at which time he was survived by two sons, Gustav Erbe, *375 Jr., and Frederick G. Erbe, and by a daughter, Bose Slemin. Frederick G-. Erbe, one of the sons, died in 1932, survived by his wife, Elnora Erbe, who died in 1942, and by a son, Frederick G. Erbe, Jr., and a daughter, Jeanette B. Erbe. Frederick G. Erbe, Jr., and Jeanette Erbe, following the death of their mother, were appointed administrators c. t. a. of the estate of their father and were also appointed executors of their mother’s estate. Francis J. Yawman died in 1941 and May G. Yawman, his wife, was appointed executrix. Gustav Erbe, Jr., Frederick G. Erbe, Jr., and Jeanette Erbe, individually and as representatives of the estates of their deceased father and mother, and May G. Yawman, individually and as executrix of the estate of her deceased husband, are the plaintiffs in the present action. These plaintiffs or the estates of which they are representatives were at one time stockholders of Yawman and Erbe Company.
The defendant, Lincoln Bochester Trust Company, is the successor of Lincoln-Alliance Bank & Trust Company. For the purpose of convenience they will be referred to merely as the defendant bank. The defendants, Thomas B. Baker and Wallace J. Wolf, were directors of the Yawman and Erbe Company who were placed upon the board at the request or suggestion of the defendant bank. The defendant, Anna M. Wolf, is the wife of the defendant, Wallace J. Wolf.
The Yawman and Erbe Company as well as various members of the Erbe and Yawman families, had done business with the defendant bank for many years. Gustav Erbe, Frederick G. Erbe and Francis J. Yawman were all substantially indebted to the defendant bank at the time of their deaths. The plaintiff, Gustav Erbe, Jr., was also heavily indebted to the bank. Some of this indebtedness was secured by Yawman and Erbe Company stock which had been pledged as collateral. Both Frederick G. Erbe and Francis J. Yawman at the times of their deaths, and also Mrs. Yawman, were indebted to other Bochester banks, for which indebtedness Yawman and Erbe Company stock owned by both Mr. Erbe and Mr. and Mrs. Yawman, had been pledged as collateral. Aside from the indebtedness of these and other individuals connected with the company, the Yawman and Erbe Company in 1941 owed the defendant bank approximately $640,000 and the Security Trust Company of Bochester approximately $475,000.
During the 10-year period from 1931 to 1941 Yawman and Erbe Company had been operating at a loss except during the year 1936-1937 when a small profit was realized. The losses for this period were in excess of $2,000,000. The company thereafter obtained some war contracts and for the year ending *376 April 30, 1941 showed a profit after taxes of between $200,000 and $220,000. Early in 1941 an offer had been made to purchase the company at a price which was about 80% of the company’s debts. There was little or no market for the stock of the company and the defendant bank apparently felt that the only hope of liquidating the large indebtedness owing to it would be through the sale of the company. To accomplish such result it would be necessary for it to obtain ownership or control of the majority of the voting stock. If it obtained such ownership and the business of the company improved to a point where a profitable sale of the company was possible, the defendant bank would not only obtain the payment of the debts owing to it but in addition it would share in any profits realized. On the other hand, if the business of the company did not improve and its liquidation became necessary, the bank would take its loss and the stockholders would receive nothing.
This and another lawsuit, which we shall refer to as the companion action, must be considered against this factual background existing in the early 1940’s as disclosed by the affidavits and exhibits before the court on the present motion.
It is the claim of the plaintiffs in this and in the companion action that in the year 1940 defendants entered into a scheme and conspiracy to acquire control of the Yawman and Erbe Company and thereby to derive a secret profit to the detriment of plaintiffs and other stockholders. It is the claim of the plaintiffs that the defendants improperly withheld information from the stockholders concerning the improved condition of the company and that they falsely and fraudulently represented the financial condition of the corporation and its earnings and falsely represented that its stock was valueless. It is the further claim that by reason of such fraudulent representations and by reason of the fact that the defendant bank was one of the executors of the Gustav Erbe estate and by reason of the fact that it held Yawman and Erbe stock as collateral to various loans it was able to cause forced sales of the stock at less than its then value. It is the further claim that the defendant bank and the defendant, Anna M. Wolf, during the years 1942 to 1945 purchased stock of the plaintiffs and others at such depressed prices and thereby gained control of the company and that thereafter the business of the company improved and defendants during the years 1946 to 1950 received dividends on their stock and in 1950 sold their holdings at a substantial profit.
The court for the purpose of this motion assumes the truth of such allegations and that the same can be established upon a trial.
*377 In April, 1955 the companion action was instituted. With the exception of May G. Yawman, the plaintiffs in that action were the same as the plaintiffs in the present action. The defendants are the same in both actions except that in the companion action the bank was a defendant both individually and as executor and trustee of the estate of Gustav Erbe, deceased. The gravamen of that action was the alleged conspiracy of the defendants and the fraudulent representations by them, as a result of which 3,057 shares of common and 1,224 shares of preferred stock of the Yawman and Erbe Company held in the estate of Gustav Erbe and not pledged as collateral to any loan were sold in the process of the settlement of that estate, at which sale the defendant bank became the purchaser.
A motion was made in the companion action to dismiss the complaint, and this motion was granted upon the ground that certain proceedings in Surrogate’s Court in connection with the judicial settlement of the Gustav Erbe estate were res judicata and upon the further ground that all of the plaintiffs in that action had knowledge at the time of the proceedings in Surrogate’s Court of the facts upon which they sought to base their later claim of fraud and misrepresentation and that by reason of such knowledge the Statute of Limitations had run and was a bar to the maintenance of the action. (Erbe v. Lincoln Rochester Trust Co., 1 Misc 2d 413.)
The complaint in the present action contains four causes of action. In the first cause of action the plaintiffs set forth all of the Yawman and Erbe Company stock acquired by the defendant bank and the defendant, Anna M. Wolf, including both the stock obtained from the plaintiffs and from others, and allege generally that said stock was fraudulently obtained and that said defendants received dividends thereon and sold the same at a profit. Plaintiffs claim to be entitled to recover of the defendants the amount of dividends received and profits realized from the sale of the shares obtained from them. In the second, third and fourth causes of action, separate plaintiffs seek to recover such dividends and profits realized by defendants from the stock which they formerly held. The second cause of action relates to the stock of the plaintiff, Gustav Erbe, Jr., the third cause of action relates to the stock of the estate of Frederick G. Erbe and Elnora Erbe of which estates plaintiffs, Frederick G. Erbe, Jr., and Jeanette Erbe are administrators and executors, and the fourth cause of action relates to 30 shares of preferred stock of May G. Yawman and stock of the estate of Francis J. Yawman of which she is executrix.
*378 The first question for determination on this motion is whether or not the dismissal of the complaint in the companion action is a bar to the present action.
The companion action was dismissed on a motion under rule 107 based upon a determination of facts supplied by affidavits, and hence was a judgment on the merits which would bar the present suit if there is sufficient identity between the causes of action stated in the two complaints. (Potter v. Emerol Mfg. Co., 275 App. Div. 265, 267; Speziale v. National Brass Mfg. Co., 162 Misc. 261; see, also, Linton v. Perry Knitting Co., 295 N. Y. 14.) In order to grant this motion based upon the judgment in the companion action it must appear that the causes of action alleged in the present complaint were determined by the prior judgment. Where the prior judgment merely creates an estoppel as to points actually decided, but leaves open other issues which are raised in the second action, there can be no dismissal under rule 107. (Sielcken-Schwarz v. American Factors, 265 N. Y. 239, 244.)
Applying these rules to the facts pleaded in the two actions, we reach the conclusion that the dismissal of the complaint in the companion action does not constitute an adjudication requiring the dismissal of the complaint now under consideration. In the companion action the complaint related only to acquisition by the defendant bank of Yawman and Erbe Company stock held in the estate of Gustav Erbe, deceased. In the present complaint other stock is involved. The second cause of action relates to stock owned personally by Gustav Erbe, Jr., and pledged by him as collateral to a loan at the defendant bank. This stock was surrendered to the defendant bank. The third cause of action relates to stock formerly held in the estates of Frederick G. Erbe and Elnora Erbe. Part of the Frederick G. Erbe stock was pledged to the defendant bank. The defendant bank foreclosed on this collateral and the stock was sold at public sale. Additional stock of Frederick G. Erbe was pledged as collateral to a loan at the Security Trust Company. The creditor foreclosed on this collateral and the same was sold at a private sale at said bank. There was additional Yawman and Erbe stock in the estate of Frederick G. Erbe which was not pledged as collateral. In connection with the settlement of the estate, the attorneys representing that estate sold the stock at auction on the courthouse steps. The stock in the estate of Elnora Erbe was pledged at the defendant bank as collateral security for the loan of her husband, Frederick G. Erbe. The bank foreclosed upon this collateral. The fourth cause of action relates to stock of Yawman and Erbe Manufac *379 faring Company owned by Francis J. Yawman in Ms lifetime and 30 shares of preferred owned by his wife. Part of tMs stock owned by Mr. Yawman was held by the defendant bank as collateral security to his loan. Part of this stock was held by the Central Trust Company as collateral security to his loan at that bank and part of this stock, together with the 30 shares of preferred owned by his wife, was held as collateral by the Union Trust Company of Rochester to secure a loan of Mrs. Yawman. Some of this stock owned by Mr. Yawman was unpledged. Mrs. Yawman as executrix of her husband’s estate, and individually, compromised the claims of the various banks against the estate and against herself by surrendering to the respective banks the Yawman and Erbe Company stock which they held as collateral and by selling the unpledged stock and distributing the proceeds among them. The stock involved in the first cause of action in the present complaint comprises the various shares of stock involved in the second, third and fourth causes of action and also stock held by the Gustav Erbe estate which was the basis of the complaint in the companion action which has been dismissed. However, a judgment in favor of the plaintiffs on the second, third or fourth causes of action here pleaded would impair no rights of the defendants arising out of the prior adjudication in which a single sale of stock was involved.
Not only are the stock transactions involved in the present action different from those involved in the companion action, but the plaintiffs here have different interests. In the companion action Gustav Erbe, Jr., Frederick G. Erbe, Jr., and Jeanette R. Erbe claimed to have been damaged by reason of the sale of the stock in the Gustav Erbe estate because they were distributees and legatees of that decedent. In the present action they claim to be damaged by reason of the sale of the stock owned by them individually or by the estates of Frederick G. Erbe and Elnora Erbe. May G. Yawman, who is a plaintiff in the present action both individually and as executrix of the estate of Francis J. Yawman, was not a party to the companion action and the stock owned by Mr. Yawman was not involved in that action.
In the companion action the defendant bank was involved in a fiduciary capacity as one of 'the executors and trustees of the Gustav Erbe estate. It is not a defendant in such capacity in the present action. One of the grounds for dismissal of the compamon action was that the proceedings in Surrogate’s Court on the settlement of that estate were res judicata. Such *380 defense is not here available and is not urged as a ground for dismissal of the present action.
The fraud alleged in the two actions is essentially the same, although there are some additional claims of fraud in the present action. While the dismissal of the complaint in the companion action may operate as an estoppel with reference to the sale of the stock there involved and may create an estoppel as to the time of discovery of the fraud claimed by the plaintiffs in that action, the cause of action pleaded in such companion action is not the same as the causes of action here pleaded and the issues, while similar, are not so identical as to justify the dismissal of this complaint by reason of the adjudication dismissing the complaint in the companion action. (Sielcken-Schwarz v. American Factors, 265 N. Y. 239, supra.)
The second ground upon which the present motion is made is that the action is barred by the Statute of Limitations. Defendants claim that the plaintiffs knew or should have known of the facts upon which they now base their claims of fraud in the early 1940s. If so, discovery occurred more than six years before the action was commenced.
The fraud pleaded in the first cause of action and incorporated by reference in the remaining causes of action consists substantially of two claims. The first and principal claim of fraud is that defendants withheld information as to the condition of the Yawman and Erbe Company and made false representations as to the financial condition of that company and its earnings and as to the value of its stock pursuant to a plan to obtain control of the company. This is essentially the same as the principal claim of fraud in the companion action. The court has here carefully reviewed the various affidavits and exhibits submitted by all of the parties and concurs in the conclusion reached by Mr. Justice Wither in dismissing the complaint in the companion action, that the plaintiffs, Gustav Erbe, Jr., Frederick G. Erbe, Jr., and Jeanette Erbe, both individually and as representatives of the estates of their father and mother between the years 1941 and 1945 had full knowledge of the facts upon which such inference of fraud is based.
Plaintiffs here contend that they discovered the fraud for the first time in June, 1954. It appears from the answering affidavits that at that time the attorney for the plaintiffs examined the records of the Surrogate’s Court in the Gustav Erbe estate proceedings and found that the stock in that estate was not held by the defendant bank as collateral and that there was no decree authorizing the purchase of the stock in that estate by the defendant bank. This alleged discovery was made the basis of a *381 claim of fraud in the companion action to the effect that the defendants falsely represented that the bank held this stock as collateral whereas it was in fact unencumbered. This claim of discovery was fully considered and disposed of by the court in dismissing the complaint in that action. There is moreover no such claim of fraud in the present action and such alleged discovery is here of no avail to the plaintiffs.
The answering affidavits further state that plaintiffs’ attorney in August, 1954 found a memorandum in the files of the bank dated August 31, 1940 stating that the defendant bank desired control of the Yawman and Erbe Company and would undoubtedly become the bidder for the stock in the Gustav Erbe estate; that later an examination of memoranda in the files of the Central Trust Company in connection with the debt due it from the Yawman estate indicated that the defendant bank controlled and desired to continue control of the Yawman and Erbe Company and hence would be willing to purchase the common stock held by that estate; that further investigation disclosed that when the brokerage firm of Meyer & Elwell, Inc., purchased Yawman and Erbe Company stock, it did so for the account of the defendants, Wallace J. Wolf and Anna Wolf. These facts it is claimed indicate a discovery for the first time that the defendant bank formulated and carried out a plan to acquire control of the company.
We find no merit in such claim. All of the plaintiffs, with the exception of Mrs. Yawman, were parties to the proceedings in Surrogate’s Court. In the petition for judicial settlement verified by the plaintiff, Gustav Erbe, Jr., it is stated that defendant bank proposed to bid upon the Yawman and Erbe Company stock. In the objections to the account filed by a Special Guardian and joined in by the Frederick G. Erbe estate and the plaintiffs, Frederick G. Erbe, Jr., and Jeanette Erbe, it is stated that the defendant bank was not acting in good faith and 1 ‘ now seek to sell these securities to themselves and in this manner secure the control of the Yawman and Erbe Manufacturing Company.” (Emphasis supplied.) In the brief in that proceeding submitted on behalf of the estate of Frederick G. Erbe and on behalf of Frederick G. Erbe, Jr., and Jeanette Erbe it is stated, “ But there is still no market, and a sale now of the shares of the estate would of necessity be a sale to the bank for whatever it wanted to pay, leaving the bank in the position of being able to acquire control of the corporation through other purchases and make a profit on the sale of the business as a whole.” (Emphasis supplied.) The plaintiffs other than Mrs. Yawman knew that the defendant bank acquired not only the stock in the *382 Gustav Erbe estate but that it acquired additional stock, by taking over collateral which it held. These plaintiffs knew in 1941 to 1945 that the defendant bank was attempting to acquire a controlling interest in the company or at least had reasonable grounds for such suspicion. They were therefore put upon inquiry and are chargeable with the knowledge which a proper inquiry would have disclosed. (Higgins v. Crouse, 147 N. Y. 411; Sielcken-Schwarz v. American Factors, 265 N. Y. 239, supra; Ectore Realty Co. v. Manufacturers Trust Co., 250 App. Div. 314; Kelly v. City of New York, 276 App. Div. 540, affd. 302 N. Y. 589.) A proper inquiry at that time would have disclosed exactly what they now claim to have discovered in 1954.
Moreover the financial condition of the company was fully explored in the hearings before the Surrogate. The plaintiff, Gustav Erbe, Jr., as the treasurer, secretary and a director of that company, knew as much if not more about its condition than any of the defendants. If the representations as to the value of the company stock were false, this was known or should have been known to all of these plaintiffs at that time.
The second claim of fraud as alleged in the first cause of action in the present complaint was not pleaded in the companion action. It is here alleged that the common or voting stock consisted of 12,098 shares, and that on August 30, 1940 the bank held 6,374.5 shares constituting a majority of the voting stock, and that the defendants falsely and fraudulently represented that they did not have the control of the majority of this voting stock. It appears, however, from the complaint that of the stock so held by the bank, 3,317.5 shares were held as collateral security for various loans and that this pledged stock stood in the name of the respective pledgors. This being so, only the stockholders appearing on the records of the corporation would have the right to vote such stock. (Stock Corporation Law, § 47; Matter of Bruder & Son, Inc., 302 N. Y. 52, 57; Matter of Ringler & Co., 204 N. Y. 30, 38; Matter of D. J. Salvator, Inc., 268 App. Div. 919; Matter of Robert Clarke, Inc., 186 App. Div. 216.) The remaining stock which it is claimed gave the bank control consisted of 3,057 shares of common in the estate of Gustav Erbe. This stock was not pledged as collateral to any loan. Under the will of Gustav Erbe, the right to vote this stock was expressly given to his sons, Frederick G. Erbe and Gustav Erbe, Jr. The only right given to the bank as one of the executors was to decide any question with respect to the voting of said stock as to which the sons might disagree. It appears, therefore, from the complaint and from the records presented on this motion that the defendant bank did not have control of the voting stock of the company *383 in 1940. It further appears from the records submitted on this motion that the board of directors of the company at that time consisted of nine members, only two of whom the plaintiffs claim represented the interests of the defendant bank. Any control that the bank exercised over the corporation arose not from ownership or control of the voting stock but from the fact that it was the principal creditor of the corporation. This fact, together with the fact that it had representation on the board of directors, was fully disclosed in the proceedings in Surrogate’s Court in 1941 and was known to the plaintiffs other than May G. Yawman at that time.
In addition to the allegations of fraud pleaded in the first cause of action above referred to, the plaintiff, Gustav Erbe, Jr., in the second cause of action alleges that representations were made to him that it was in the best interests of the company and its employees and stockholders to keep control of the company in the hands of Rochester interests and that he should not attempt to refinance his loan or that of the company or try to sell the company or a controlling stock interest therein. Such representations obviously were expressions of opinion only and did not constitute misrepresentations as to any existing facts. He alleges further that it was represented that the transfer of his stock to the bank would not prejudice his investment in the company and that it was necessary because of the requirements of the bank examiners that the claims against him be reduced to judgment.
The bank was a creditor of Gustav Erbe, Jr. It stood in no fiduciary or confidential relationship to him as an individual. In his affidavit submitted on this motion Mr. Erbe states that in 1940 and 1941 he was insolvent. He does not dispute his indebtedness to the bank. The defendant bank was _ obviously in a position at any time to foreclose on the collateral which it held securing the loans of this plaintiff, or reduce such indebtedness to judgment. On July 29, 1943 Gustav Erbe, Jr., wrote to the bank offering to sell his stock which the bank held as collateral for the same price as had been paid for the stock in his father’s estate. Later and on October 25, 1943 he made a more formal offer which he says was requested by the defendant Baker, stating that the indebtedness on his demand note had been reduced to $78,879.29, at which time he offered to turn his collateral over to the bank for $26,852.50, which amount was to be credited against his loan. The stock was apparently transferred to the bank on the same date and Mr. Erbe’s loan credited in accordance with his letter.
*384 It is inconceivable that Mr. Erbe would have believed any statement which may have been made to the effect that such a sale did not prejudice his investment in the Yawman and Erbe Company. Even if such statement were made and believed by him, he, as the secretary and treasurer of the company, knew at that time that his stock had been transferred and that his ownership in the company had in fact ceased.
In the third cause of action the complaint contains additional allegations peculiar to that cause of action to the effect that the defendant Baker demanded and urged that the estate of Frederick G-. Erbe be closed; that said Baker refused to furnish to the attorneys for that estate financial data on the Yawman & Erbe Manufacturing Company; and that finally the defendant bank filed a petition for a compulsory accounting in said estate. We see no element of fraud in these allegations. The defendant bank was a creditor of this estate for $25,863.15 plus accrued interest. The decedent died in 1932, but the claim had not been paid, nor had the estate been settled. The bank was clearly within its rights in demanding a settlement of the estate and in instituting a proceeding for a compulsory accounting. The defendant bank owed no fiduciary duty to said estate but was simply an unpaid creditor. There was no duty either upon the part of the bank or the defendant Baker to furnish information concerning the financial status of the Yawman and Erbe Company. The executors of this estate were parties to the proceedings in Surrogate’s Court in 1941 when there was a full examination into the financial condition of the company. If later information was desired it should have been obtained from the company itself. The executors having failed to make any such inquiry are chargeable with knowledge of the facts which a proper inquiry would have disclosed. (Higgins v. Crouse, 147 N. Y. 411, supra.)
On June 17,1944 the defendant bank foreclosed on 330 shares of common stock of the estate which it held as collateral, and on September 11,1945 it foreclosed on 45 additional shares of common stock owned by the estate of Elnora Erbe which had been pledged as collateral to the loan of her husband, Frederick Gr. Erbe. In so doing it acted entirely within its legal rights. In September, 1945 the Security Trust Company foreclosed on the collateral which it held. There is no claim that this bank acted through any fraudulent motive. The estate held 436 shares of common and 50 shares of preferred which were not pledged as collateral. In the course of the judicial settlement of the estate, this stock and other assets of the estate were sold at public auc *385 tion at a sale conducted by the attorneys for the estate who were in no way connected with the bank or either of the other defendants. The assets were sold on the courthouse steps on September 6, 1945 and the affidavit of the attorney for the estate filed in the estate proceeding, recites that after spirited bidding the Yawman and Erbe Company common was sold for $3.25 per share and the preferred was sold for $36 per share. The stock was purchased in the name of Anna M. Wolf who we will assume was acting for the bank. Even so, the bank had a perfect right to have its representative bid at this sale and purchase the stock. 11 violated no legal or moral duty in so doing.
No additional facts are alleged in the second or third cause of action which tend to support plaintiffs’ claim of discovery of the fraud within six years prior to the commencement of the action. The causes of action asserted by the plaintiffs other than Mrs. Yawman are barred by the six-year Statute of Limitations.
As to the plaintiff, May Gr. Yawman, individually and as executrix, a different situation exists. She was neither a party to the proceeding in Surrogate’s Court nor was she a party in the companion action. She was neither a director nor an officer of the Yawman and Erbe Company. She was not therefore in the same position to acquire knowledge of the facts which are the basis of the claim of fraud as were the other plaintiffs.
Defendants urge, nevertheless, that the six-year Statute of Limitations is a defense to her cause of action. Attention is called to her affidavit on the present motion, in which she states that in 1943 she felt sure that the stock was worth more than the amount of the debt for which it was pledged. Defendants claim that such belief imposed upon her as executrix of her husband’s estate a duty of inquiry with reference to the value of the stock, and hence she is chargeable with the knowledge which a proper inquiry would have disclosed. We conclude, however, that the application of this rule of law, in the case of Mrs. Yawman, would raise questions of fact which should be passed upon on a trial. (Higgins v. Crouse, 147 N. Y. 411, 416, supra; Newton v. Scott, 254 App. Div. 140, 147.) We cannot hold on the affidavits here submitted that the claims of this plaintiff are barred by the Statute of Limitations.
There is one other question in connection with the Statute of Limitations which invites comment. Plaintiffs in their argument and brief have assumed that the six-year statute applies. The complaint, however, alleges in the various causes of action that a constructive trust was created and relief is asked upon this theory. Under such a claim the 10-year Statute of Limitations *386 would apply and the cause of action would be deemed to have accrued when the acts occurred upon which the claim of the constructive trust is predicated. (Scheuer v. Scheuer, 308 N. Y. 447 ; Lammer v. Stoddard, 103 N. Y. 672; Buttles v. Smith, 281 N. Y. 226, 236.) The present action was started in July, 1955 and all of the stock transactions involved occurred more than 10 years prior to that date with three exceptions. In September, 1945 the stock in the estate of Frederick Gk Erbe, which had not been pledged as collateral, was sold at public auction in a proceeding brought by the executors of that estate in connection with its judicial settlement. In the same month the Security Trust Company sold the collateral which it held in the same estate, and on about the same date the defendant bank foreclosed on the collateral which had been pledged to it by Elnora Erbe securing the loan of Frederick Gk Erbe. When it foreclosed on the collateral which had been pledged to secure an indebtedness owing to it, the defendant bank was pursuing a legal remedy. The right to exercise such remedy or the manner in which it was exercised is not here questioned. It was likewise exercising its legal remedy when, as a creditor, it petitioned for the settlement of the estate more than 10 years after the death of the testator and the issuance of letters (Surrogate’s Court Act, §§ 258, 259). It had no part in the subsequent liquidation of that estate or the sale of assets. It violated no duty, legal or moral, if it or its agents purchased some of the assets at such sale. The good faith or legal right of the Security Trust Company to foreclose on the collateral which it held, securing indebtedness of the estate, is not challenged by the plaintiffs. If the defendant bank or its agents thereafter desired to purchase the stock so acquired by the Security Trust Company, it violated no duty, legal or moral, to the estate in so doing. A constructive trust cannot arise out of the legal steps taken by a creditor to protect its rights. As has been well said, “ The defendant certainly could not be deprived of the right of protecting his own property interests save only under penalty of committing a constructive fraud (Mackall v. Olcott, 93 App. Div. 282, 291, affd. 183 N. Y. 580.) The elements necessary to give rise to a constructive trust are therefore lacking with reference to these three transactions, and hence the 10-year Statute of Limitations does not apply. If it does apply to any of the other transactions, it constitutes a complete bar against any claim to impress a constructive trust.
The third question for determination on this motion relates only to the cause of action of the plaintiff, May Gk Yawman, individually and as executrix. The question is whether such cause of action has been released.
*387 The moving papers set forth a general release signed by May Gr. Yawman as executrix of the last will and testament of Francis J. Yawman, deceased, running to the defendant bank and dated November 29, 1943. No reference to this release is made in the complaint and no rescission is claimed or demanded. In her affidavit submitted on this motion Mrs. Yawman does not deny the execution of the release. The inference is permissible from the pleading and the affidavit that such release was obtained as part of the alleged fraudulent scheme of the defendants to procure stock of the Yawman and Erbe Company.
Assuming that such release was procured by fraud, it is well settled that the defrauded party may pursue one of three remedies ; (1) he may return the consideration and rescind the release and then maintain an action at law to recover the consideration parted with; (2) he may bring an action in equity for a rescission and offer in the complaint to return the consideration and make tender of it upon the trial; or (3) he may retain the consideration and sue at law for his damages. If he pursue the latter remedy, the release does not constitute a bar. (Goldsmith v. National Container Corp., 287 N. Y. 438; Ross v. Preston, 292 N. Y. 433, 436; Inman v. Merchants Mut. Cas. Co., 190 Misc. 720.) Otherwise a release even though obtained by fraud is voidable only, and until rescinded is a bar. (Kamerman v. Curtis, 285 N. Y. 221.)
If this can be construed as an action at law for damages, the release would not be a bar. It is impossible, however, to so construe the cause of action as now pleaded. In the twenty-second and sixty-first paragraphs of the complaint it is alleged that defendants have failed to account to the plaintiff for the proceeds of the sale of the stock or for dividends received. In the twenty-third and sixty-second paragraphs it is alleged that plaintiffs are entitled to the proceeds realized by defendants from the sale of the stock, plus dividends received and interest, and that such proceeds should be impressed with a constructive trust. In the sixty-second paragraph it is alleged that the plaintiff has no adequate remedy at law. In the prayer for relief the plaintiffs, including Mrs. Yawman, ask, (A) that the defendants account for all income and profits received; (B) that plaintiffs recover damages from defendants for all proceeds and profits derived; (0) that defendants be adjudged to pay the proceeds and profits realized from the trust property; and (D) that it be decreed that the proceeds and income from the sale of the stock be held upon a constructive or resultant trust for the benefit of the plaintiffs.
It is true that under (B) plaintiffs ask for damages but such damages are stated to be the proceeds and profits derived by *388 defendants from their fraud. In an action at law for damages resulting from fraud all elements of profit are excluded. The measure of damages in such an action is the difference between the amount paid for the stock and its value at the time of sale with interest from such date. (Reno v. Bull, 226 N. Y. 546; Sager v. Friedman, 270 N. Y. 472, 481.) No such damages are here demanded. Construed as a whole the cause of action is one for an accounting or to impress a constructive trust. Insofar as it seeks to impress a trust it is barred as to Mrs. Yawman by the 10-year Statute of Limitations. This leaves only the cause of action for an accounting which as to the plaintiff, May G. Yaw-man, as executrix, is barred by the release. (Kamerman v. Curtis, 285 N. Y. 221, supra.)
The release, having been signed by Mrs. Yawman only as executrix and not individually, does not operate as a bar to her individual cause of action, if any. The complaint does allege that she owned 30 shares of preferred which she had pledged at the Union Trust Company as collateral to her personal loan, and after she surrendered this stock to the Union Trust Company, it was purchased by the defendant, Anna M. Wolf. The determination reached makes it necessary to sever this individual cause of action. If the plaintiff desires to pursue such cause of action, it should now be separately stated and not commingled with other causes of action which have been dismissed. The court is empowered in its discretion under rule 108 and under the general prayer for relief in the notice of motion (Thompson v. Erie Ry. Co., 45 N. Y. 468, 476; Kellogg v. Commodore Hotel, 187 Misc. 319) to grant such severance and dismiss said cause of action with permission to the plaintiff to serve an amended complaint.
The individual cause of action of the plaintiff, May G. Yaw-man, is severed and said cause of action is dismissed with permission to the said plaintiff to serve an amended complaint as to said cause of action if so advised within 20 days after the service of an order to be entered hereon. Otherwise the motion is granted and the complaint of the plaintiff, May G. Yawman, as executrix, is dismissed on. the ground that this cause of action is barred by the release, and the complaint of the remaining plaintiffs is dismissed upon the ground that their causes of action are barred by the Statute of Limitations.
Cross motion by plaintiffs to strike certain exhibits from motion papers is denied.