SOUTH AMERICAN PETROLEUM CORPORATION, Plaintiff, *v.* COLOMBIAN PETROLEUM COMPANY, a Delaware Corporation, Defendant.

Supreme Court, Trial Term, New York County, December 5, 1941.

*McCombs & Ryan* [*Frederick R. Ryan* and *Samuel Adamson* of counsel], for the plaintiff.

*Curtis, Mallet-Prevost, Colt & Mosle* [*Creswell M. Micou, Milo H. Borges* and *Rudolf Sobernheim* of counsel], for the defendant.

HOFSTADTER, J. Plaintiff and the defendant are corporations, organized under the laws of the State of Delaware. Plaintiff seeks to recover the sum of $81,938.76, with interest, alleged to be due to the plaintiff from the defendant pursuant to the terms of a written agreement dated at New York on the 29th day of April, 1932. (The agreement was subsequently translated into Spanish and, with some modifications not here relevant and the addition of other parties, was executed in Bogota, Colombia, and there duly registered in accordance with its laws.) The contract provided that the payments to be made to the plaintiff by the defendant were to be made in pesos (or in kind) in Colombia, or in American dollars in New York, at the option of the plaintiff. Concededly, in timely manner, the plaintiff has exercised its option to be paid in American dollars, and the amount sued for is correct. The sole defense interposed is based on the Foreign Exchange Control Laws of the government of Colombia, and certain administrative rulings, by virtue of which it is claimed that the defendant is prohibited from making payment to the plaintiff in American dollars. It is urged by the defendant that the relations between the parties must be governed by the laws of Colombia; that the option itself, in so far as it permitted the plaintiff to demand payment in American dollars, was void.

For our present purposes, it is unnecessary to detail the entire history preceding the transaction. It is sufficient to point out that the defendant's concession from the Colombian government to produce and export oil, was made dependent by the government of Colombia upon the release of certain rights to the said concession claimed by the plaintiff and others. It was to extinguish these rights that the plaintiff and the defendant entered into the contract in suit, by the terms of which the plaintiff became entitled to certain payments from the defendant. The only point at issue is whether the plaintiff's option, explicitly given to it to receive payment in American dollars at New York, is enforcible in this court. The question thus presented states a problem in private international law, as it is sometimes called, or, more frequently, conflict of laws. The essential principles involved are well established. Their application here, however, has not been without some perplexity.

The claim urged by the defendant that what the court is here dealing with is a *property* right having a *local* situs in Colombia,

and that consequently the law of Colombia is applicable thereto in all respects, is without substance and without support in the cases cited. Here, we are dealing with a contract between the plaintiff and the defendant by the terms of which the plaintiff is given no right to any specific property owned by the defendant, either here or in Colombia; the only right which the plaintiff has is the right to receive certain payments either in money or kind, and the only obligation which the defendant has is to pay in the manner elected by the plaintiff. This right is obviously one of contract. It is a right *in personam* and as such is governed by the principles applicable to contracts.

There is dispute between the parties whether the contract was made in New York or in Colombia, the plaintiff maintaining that the agreement was made in New York and the defendant asserting that it was made in Colombia. While the facts lend support to the defendant's position that the final agreement between the parties was concluded in Colombia, it is not necessary to pass upon that question. The specific issue between the parties does not concern the validity and interpretation of the contract generally to which the *lex loci contractus* is applicable (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 N. Y. 407), but merely the law governing that term of the contract which confers upon the plaintiff the option to be paid in American dollars in New York. Whether or not the contract as a whole in its interpretation and significance is governed by the law of Colombia or of New York, it is manifest that in so far as it requires performance to any extent by the defendant in New York, that aspect of the defendant's obligation is governed by our law. For it is well settled that matters of the performance of a contract are governed by the law of the place of performance, and particularly the problem with respect to the medium of payment in which a contract to pay money is to be interpreted is subject to the rules of the place of payment. (See Restatement, Conflict of Laws, § 364.) Where the place of performance is optional, the applicable law, when the option has been exercised, is the law of the place of performing, which is chosen by the party having the option. (Id. § 356.) Under the express terms of the agreement between the parties, it was the plaintiff who had the option to be paid pesos (or in kind) in Colombia, or in New York in American dollars. Having chosen to be paid in American dollars, the law of the place of performance, which in this case is New York, becomes the applicable jurisprudence.

The cases cited by defendant for its contention that, where there are *alternative* places of performance, the *lex loci contractus* governs, do *not* support its position. They are altogether irrelevant

to the situation at bar. Those cases deal with situations where the place of performance is various, indefinite or scattered over a number of jurisdictions, so that there is no definite place of performance, the law of which can be made applicable. Because of the necessity of applying some law it has been held, arbitrarily, that the law of the place of contracting governs even with respect to matters of performance. But where the place of performance is definite or easily ascertainable or subject to being established — and it is so established — there is no reason why the well-settled principle should not be applied, that matters concerning performance be governed by the law of the place of performance.

Nor are *Guaranty Trust Co.* v. *Henwood* (307 U. S. 247) and *Bethlehem Steel Co.* v. *Zurich Ins. Co.* (Id. 265), pertinent or persuasive. While those cases have elements of similarity to the case at bar, in that there as here the plaintiff was given an option to be paid in foreign currency, they differ essentially from the case at bar. There the court construed the obligation of the defendant to be an obligation to pay American dollars. There the court held that the obligation was subject to the will of Congress since it was a duty to pay in American money, and that the exercise of the option to receive foreign currency, made after the passage of the concurrent resolution of Congress could not effectively enlarge the obligations of the defendant beyond that permitted by the American Congressional legislation. There was nothing in those cases to show that the foreign currency was available to the defendant at the place of the optional payment, nor was the plaintiff there seeking to recover foreign currency. On the contrary, the plaintiff was invoking the aid of an American court to obtain a judgment in dollars in excess of the amount permitted under the laws of the United States.

Here, there is no understanding in the contract between the parties that the payments to the plaintiff must necessarily derive from the proceeds of oil mined in Colombia; nor is there any implication that the rights granted to the defendant by the Colombian government, to utilize the proceeds of its oil exports for any purpose it sees fit, do not embrace the right to pay American dollars to the plaintiff in New York. On the contrary, the implication is that the defendant undertook to make the payments in American dollars, should the plaintiff so elect to be paid, without regard to the source from which these dollars would derive, and without regard to the Colombian Exchange Control Laws. It is conceded that the defendant is in sufficient funds in this jurisdiction to enable it to meet the payments required of it under the option as exercised by the plaintiff; and that it has such funds in sufficient amount, both from the proceeds of its oil exports and sales, and otherwise.

I think it is appropriate to state at this point that, apart from all other considerations, the fact that the parties had knowledge of the existence of the Colombian Exchange Control Laws at the time the contract was made precludes the defendant from successfully attempting to render nugatory the provision for payment in American dollars, on any of the theories urged by the defendant. The defendant makes much of the fact that the Colombian Exchange Control legislation was avowedly intended to be temporary, as if that fact would explain the inclusion in the contract of the obligation to pay in American dollars at the plaintiff's option at a time when, according to the defendant, the laws of Colombia prohibited such payment. But temporary or permanent, the Colombian Exchange Control legislation was on the books and its temporal duration was unknown to the parties. Surely, had the defendant believed the regulations in question to be an obstacle to the performance of its obligation to pay in dollars, it would have inserted a provision excusing such performance, at least, during the pendency of these regulations. Indeed, the covenant to pay in American dollars in New York, *regardless* of Colombian Exchange Control regulations, may very well be implied under all the circumstances of this case. That such a covenant must be implied even " where the covenant was probably beyond the pale of the conscious thought of the parties," but nevertheless " necessary in order to give effect to and effectuate the purpose of the contract as a whole," is a well-established principle of law. (25 Corn. L. Q. 615. See, also, *Wood* v. *Duff-Gordon*, 222 N. Y. 88; *Simon* v. *Etgen*, 213 id. 589; *Assets Realization Co.* v. *Howard*, 211 id. 430.) Having failed to include a clause excusing the payment in American dollars, at least for the duration of the Exchange Control legislation, we must assume that no obstacle was visible to the parties preventing the performance by the defendant of its contract with the plaintiff in accordance with the option given to the plaintiff.

The same conclusion follows were we to assume that the contract even in matters of performance is governed by the laws of Colombia.

Both the plaintiff and the defendant by stipulation have submitted opinions of learned counsel of the Colombian bar, and have referred the court to the relevant statutes and administrative rulings. Upon careful study of these statutes, rulings and opinions, I find that the defendant has failed to sustain the burden incumbent upon it of establishing that under Colombian law it is forbidden to meet its obligation to pay the plaintiff American dollars in New York out of funds available to it here. Indeed, I conclude otherwise.

The concession granted to the defendant by Colombia specifically provides that the petroleum produced " will not be taxed or encumbered in any manner by the Nation, the Departments, or the Municipalities." Counsel for the defendant admit that under the resolution adopted by the Minister of Finance the defendant is permitted " to export its petroleum without accounting to the Bank of the Republic for the foreign exchange received therefrom and permits the defendant to utilize the proceeds of the sale of the exported petroleum in the same manner that it may utilize any other funds which it may have in foreign currency, provided it does not use them to make payments in foreign currency prohibited by Colombian Foreign Exchange legislation." The rulings upon which the defendant relies to show that it is prohibited, under Colombian law, to make payment in American dollars to the plaintiff, were obtained only after repeated effort by the defendant. The first one did not satisfy the defendant, for it merely stated that with respect to foreign currency which the company " for any reason is to bring into the country," it is subject to the provisions in force or to those which in the future may be issued. Obviously, this ruling did not affect the obligation of the defendant to the plaintiff, for the obligation of the defendant to the plaintiff was to pay in American dollars in New York, and there was no necessity of bringing foreign currency into Colombia. Accordingly, it made a further request for a clarification of the ruling and secured from the Ministry of Finance and Public Credit of Colombia an opinion to the effect that " it is evident that in view of the present Colombian legislation, the Company cannot carry on international exchange operations or payments in foreign exchange in Colombia or abroad without the previous written permit of the Control Offices." It is obvious that this opinion is unsupported by any of the decrees referred to by the Minister and that it does not, in express language, cover the instant situation. The Minister does not interpret the contract between the parties, but merely states that the defendant may not carry on " international exchange operations." But there is nothing in the instant case which requires the carrying on of international exchange operations by the defendant. As long as the defendant does not bring foreign currency into Colombia, it is free under its contract with the Colombian government to utilize even the proceeds of the sale of petroleum exported from Colombia in any manner that it may see fit. Its obligation under the Colombian Exchange Control legislation arises only after it has brought foreign currency into Colombia. We have seen that it was unnecessary for it to do this under the contract with the plaintiff. Nor do the opinions

of counsel, based as they are on the interpretation of the documents I have examined, persuade me to a contrary view. There is lacking any controlling statute or authentic administrative ruling of Colombia prohibiting the defendant from making payment to the plaintiff in American dollars out of funds available to it in New York.

Accordingly, whether the contract be governed by the law of Colombia or by the law of New York, whether the obligation of the defendant to pay to the plaintiff the amounts conceded to be due to the plaintiff are subject to New York or Colombian law, the result is the same. The plaintiff is entitled to be paid in American dollars.

The plaintiff's cause seems inherently just. It had made a specific contract and surrendered rights in exchange for a positive promise to receive, at its option, payment in American dollars. The obligation of contract must be upheld, unless considerations of policy or valid legal obstacles arise to prevent the carrying out of the intention of the parties. There are none here.

Legal principles, in their steady application to varying factual circumstances, must always have ethical sanctions. Technical perfection in the analysis of legal problems must give way at times to the deeper interest, instinct in the common law, to provide judicial expression for the public interest in the security of transactions. The obligation of contract is not a fetish. But a sound juristic ethic requires that promises solemnly made be enforced in the manner in which reasonable men understand them. Supervening considerations of public policy have, on occasion, impelled a departure from this principle; but where, as here, the parties have undertaken their commitments with a full realization of all the facts and circumstances, and no reasons of policy or considerations of comity with a sister republic interfere, the judicial task becomes crystal clear.

I accordingly find the plaintiff is entitled to judgment in the sum of $81,938.76, together with interest from the dates indicated in the complaint, and direct a verdict and judgment accordingly.