Witmer, J.
Defendants have moved for dismissal of the amended complaint herein under rule 107 of the Rules of Civil Practice on the grounds that a final decree in Monroe County Surrogate’s Court determined on the merits the same issues presented by the amended complaint as between plaintiffs and defendant, Lincoln Rochester Trust Company, and is res judicata as to them, and that the Statute of Limitations has run against the plaintiffs as to all of the defendants.
The amended complaint contains extensive allegations. On this motion the court assumes that the allegations of fact therein can be established by proof and are true.
The plaintiffs are the persons interested in the estate of Gustav Erbe, deceased, who died in 1931. The plaintiff, Gustav Erbe, Jr., and the defendant, Lincoln Rochester Trust Company, through a predecessor corporation, with others became executors and trustees of the will, which made provision for the widow for life, with remainder to decedent’s issue. The principal assets of the estate of said testator were shares of preferred and common stock in the Tawman & Erbe Manufacturing Company. The business of this corporation during the 1930’s was not prosperous; the stock was closely held, and ther» *415 was no ready market therefor. In the lifetime of said testator, Gustav Erhe, he and members of his family became indebted to the defendant bank, and some shares of Yawman & Erbe stock, not owned by the testator, were pledged to defendant bank to secure payment of such indebtedness. The executors of the testator retained the Yawman & Erbe stock in his estate, and voted it in connection with the election of directors for Yawman & Erbe Manufacturing Company.
The complaint and the undenied facts set forth in the affidavits in support of the defendants’ motions further show that in 1941 the said executors filed an account of their acts as such in Monroe County Surrogate’s Office and petitioned for the judicial settlement thereof, and therein they stated that it was necessary to sell the estate stock in Yawman & Erbe Manufacturing Company in order to pay debts and distribute the estate; that it was proposed to offer the stock at public sale; that defendant bank bid for such stock at the sale, and that if it were the successful bidder, permission was asked to pay the bid price by offsetting the same against the amount which it should be determined testator’s estate owed to the bank. The defendant bank also set forth its claims against testator’s estate.
The plaintiffs, Frederick G. Erbe, Jr., and Jeanette R. Erbe, appeared in said accounting proceeding and filed objections thereto, objecting to defendant bank’s claims against testator’s estate, and joining in other objections to the sale of the estate’s Yawman & Erbe stock as proposed by the executors, and to the purchase thereof by defendant bank, and charged that the executors were acting in bad faith in an attempt to secure control of the Yawman & Erbe Manufacturing* Company.
In July, 1941, a trial of the objections was had; and by decision of July 25, 1941, the Surrogate allowed defendant bank’s claims against the estate, and declined to give advice concerning the sale of the Yawman & Erbe stock, but stated that after a full hearing* it appeared that a public sale thereof would be advantageous, that the estate beneficiaries could not expect the defendant bank, as executor and major creditor, to carry the risk as to the future value of the stock, that if the beneficiaries wished they might buy it themselves, and that there was no reason why defendant bank, a coexecutor, could not bid at such sale to acquire such stock for itself. On September 9, 1941, a decree of the Surrogate was entered on such decision, wherein defendant bank’s claims were allowed and all of the objections “ heretofore filed herein ” were dis *416 missed, the account was approved to September 6,1941, and the, proceeding was adjourned to December 4, 1941. Thereafter from time to time the proceeding was further adjourned and continued until the subsequent accounting proceeding which was begun in October, 1943.
In the meantime in June and July, 1943, the executors, including the plaintiff, Gustav Erbe, Jr., and the defendant bank, published and posted notices of the proposed sale of the estate’s Yawman & Erbe stock at public sale at the offices of the defendant bank and notices thereof were sent to many outside persons who might be interested, and to the persons interested in testator’s estate, and on July 17, 1943, the stock was offered for sale, and bid in by the defendant bank. Thereafter the executors, including the plaintiff, Gustav Erbe, Jr. and defendant bank, on due notice petitioned the Surrogate in October, 1943, for approval of their account of the affairs of the estate from September 6, 1941, to the conclusion thereof; the account was filed, and a full report was made of the proceedings for the sale of the Yawman & Erbe Manufacturing Company stock and the purchase thereof by the defendant bank. Objections to this account were also filed, and dismissed by the Surrogate by decision dated March 5, 1945. Thereafter on March 25, 1945, a final decree was made and entered reciting the proceedings from the institution of the accounting in 1941 to date, and dismissing the objections to the account of October, 1943, and approving such account. No appeal was taken from either decree of the Surrogate of September 9,1941, and March 25,1945.
Plaintiffs allege in their amended complaint that defendant bank acted in bad faith in purchasing the stock, that it had access to the books of Yawman & Erbe Manufacturing Company, because it had elected at least one of its officers as director thereof, that it knew that such stock was worth much more than defendant paid for it, that it concealed such fact from the plaintiffs and from the public and potential purchasers thereof, and in breach of its fiduciary obligation it purchased the stock for its own enrichment at the expense of the estate and of the plaintiffs. They allege further that the defendant bank misled the Surrogate to believe that the bank held the stock in question as collateral, whereas it was in fact an unencumbered asset of the estate, and that thus the Surrogate was misled into stating in his decision of July 25, 1941, that there was no objection to the defendant bank bidding in the stock on a sale. They also allege that the defendant bank fraudulently claimed that testator’s estate was indebted to it.
*417 Counsel for plaintiffs devote much of their briefs to the law concerning the duty of fidelity and trust which a fiduciary, such as was defendant bank, owed to the estate beneficiaries. The court is in complete agreement with such principles of law. But the motions before the court now require decision with respect to other matters. The question of fiduciary obligation is not yet before the court in this action, and the court is not now passing upon the merits of the conduct of the parties in 1941 through 1943.
It is apparent that the matters which are presented to the court in the amended complaint against the defendant, Lincoln Rochester Trust Company, are precisely the ones which were litigated before the Surrogate, and put at rest by his decrees. Certainly that is patently true with respect to the claim that the testator was not indebted to the bank, and the claims that the stock was worth more, that it shouldn’t have been sold then, that it wasn’t being offered properly, that the executors were acting in bad faith to secure control of the Yawman & Erbe Manufacturing Company, and that defendant bank should not bid for the stock at the sale. The charge that defendant bank committed fraud upon the Surrogate and plaintiffs by representing that the estate’s Yawman & Erbe stock was held by the bank as collateral, is little short of sham. The accounts, petitions and testimony before the Surrogate show conclusively the falsity of such charge. The charge is given plausibility in the least degree, only because of erroneous statements which the record shows did not emanate from defendant bank, and which had no foundation in fact in the papers it filed or in testimony which it adduced.
Since it appears beyond contradiction that the issues which plaintiffs seek to raise in this action against defendant bank have already been finally adjudged, the amended complaint must be dismissed as against the defendant bank. (Surrogate’s Ct. Act, §§ 80, 274; Gregoire v. Putnam’s Sons, 298 N. Y. 119, 125; Matter of Wade, 296 N. Y. 244, 248; Hull v. Hull, 225 N. Y. 342, 353-354; Matter of Barrett, 286 App. Div. 289.)
Furthermore, plaintiffs may not claim that the decrees are not res judicata because in the Surrogate’s proceedings they did not charge defendant bank with fraud. Plaintiffs were possessed of knowledge of the facts developed during the litigation, in which the question of defendant’s good faith was raised, and such facts are the basis of plaintiffs’ present claim of fraud. Had they wished, they could there have litigated the issue of fraud, if it wasn’t in fact litigated, and they are thus *418 bound by the decrees. (Maflo Holding Corp. v. S. J. Blume, Inc., 308 N. Y. 570, 574; Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304; Matter of Weir, 182 Misc. 845, 847.)
Plaintiffs have alleged no act by defendant bank which lulled them into inaction and caused them to permit entry of the decrees in Surrogate’s Court, and indeed defendant’s supporting affidavits and exhibits show that plaintiffs raised substantially, though in somewhat more genteel manner, the same issues before the Surrogate which they seek to retry here. There is thus no occasion for introduction of the doctrine of extrinsic fraud. (Fuhrmann v. Fanroth, 254 N. Y. 479, 482; Crouse v. McVickar, 207 N. Y. 213; Rivero v. Ordman, 277 App. Div. 231; United States v. Throckmorton, 98 U. S. 61, 64-66; Greene v. Greene, 68 Mass. 361, 366.)
In what is named a second cause of action the plaintiffs reallege the asserted wrongful acts of the bank and allege that the defendants, Thomas R. Baker, Wallace J. Wolf and Anna M. Wolf participated in such acts under a fraudulent plan or conspiracy to defraud the plaintiffs. Since there is in law no cause of action for conspiracy to defraud, this is improperly named a second cause of action. The only purpose of such allegations is to connect other persons participating in the alleged fraud with the acts of all such persons and hold them all responsible for the acts of each respecting the fraudulent deeds. (Brackett v. Griswold, 112 N. Y. 454, 466-467; Green v. Davies, 182 N. Y. 499; Leonard v. Gottlieb, 278 App. Div. 786, motion for leave to appeal denied 303 N. Y. 1014; Ippisch v. Moricz-Smith, 1 Misc 2d 120.)
The amended complaint therefore contains a single cause of action for fraud against all of the defendants. The defendants have moved against the amended complaint upon the ground that it is barred by the Statute of Limitations. Plaintiffs assert that the six-year Statute of Limitations applies. (Civ. Prac. Act, § 48, subd. 5.) That section provides in part: “ The cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud.” Plaintiffs have alleged: “ Eighteenth: That the plaintiffs discovered the falsity of the aforesaid representations when, upon investigation of counsel, when (sic) he, on or about June 22, 1954, examined the records of the Surrogate’s Court of the County of Monroe, New York, and found that neither the decree of September 9, 1941 nor any other decree authorized said Lincoln-Alliance Bank & Trust Company to bid in any *419 assets for its own account but that the Court had specifically declined to authorize the same, that the Yawman & Erbe Manufacturing Company stock had not been held by said bank as collateral securities; and they further discovered through advice of counsel the ineffectiveness of any claimed court authorization ’ \
Defendants contend that plaintiffs cannot remove the bar of the Statute of Limitations by merely alleging that they did not discover the alleged fraud until within six years of the institution of this action, whereas the court records show that long before such six-year period they had knowledge of the basic facts upon which they rest their charge of fraud. The law supports this contention. The plaintiffs will be held to have discovered the alleged fraud when it appears they knew the facts from which the inference of fraud is drawn, i.e. not only when they allege they discovered such fraud but when they should have discovered it by the use of normal mental processes, in view of the information which they then had. (Higgins v. Crouse, 147 N. Y. 411, 415-416; Dumbadze v. Lignante, 244 N. Y. 1, 9; Ectore Realty Co. v. Manufacturers Trust Co., 250 App. Div. 314, 317; Warner v. Republic Steel Corp., 103 F. Supp. 998, 1009.)
In view of such law, when did the plaintiffs “ discover ” the fraud which they allege in their amended complaint? They were parties to the accounting proceeding of 1941. The plaintiffs, Frederick Gr. Erbe, Jr. and Jeanette R Erbe, were represented by counsel; they filed objections to the account and to the proposed sale of the Yawman & Erbe stock by the executors and to the purchase of it by one of the executors, the defendant bank; they participated in the hearings before the Surrogate; their attorneys approved the decree of September 9,1941, made after the Surrogate’s decision. They received notice of the proposed sale of stock in July, 1943, and of the subsequent proceeding in Surrogate’s Court which set forth in detail the steps taken concerning such sale, and seeking the Surrogate’s approval; their attorneys approved the decree of March, 1945, judicially settling the executor’s accounts, and they acknowledged receipt of their distributive shares provided in that decree. Such participation in the estate proceedings charges them as a matter of law with knowledge then of the facts which in paragraph Eighteenth of their amended complaint they allege they did not discover until June, 1954, to wit, that the decree of September 9,1941, contained no authorization to defendant bank to bid in the estate’s Yawman & Erbe stock, *420 and that the Surrogate in his decision declined to give advice with respect thereto and that the said stock was not held by the defendant bank as collateral security. (Sielcken-Schwarz v. American Factors, 265 N. Y. 239.)
The same must be said of the plaintiff, Gustav Erbe, Jr. He was a coexecutor and trustee with defendant bank, and he was a director and secretary and treasurer of the Yawman & Erbe Manufacturing Company during this entire period. As a director, he was charged with the duty of diligence to know the condition of the Yawman & Erbe Company, and he cannot be heard to assert that he did not know its condition (Logan v. Fidelity-Phenix Fire Ins. Co., 161 App. Div. 404, 411, affd. 220 N. Y. 688; Van Schaick v. Aron, 170 Misc. 520, 535); and a similar duty of diligence was imposed upon him as coexecutor (King v. Talbot, 40 N. Y. 76, 84; Matter of McCafferty, 147 Misc. 179, 202 et seq.).
If the ten-year Statute of Limitations be applied in this case (which the plaintiffs did not seek), it must be held to have run before the institution of this action late in 1954. Such cause of action would have accrued when the defendant bank purchased said stock in 1943. (Pitcher v. Sutton, 238 App. Div. 291, 293, affd. 264 N. Y. 638; Petnel v. American Tel. & Tel. Co., 280 App. Div. 706; Hurley v. Hurley, 279 App. Div. 415; Cahill v. Seitz, 93 App. Div. 105, 109.)
In answering affidavits in opposition to this motion, plaintiffs seek in effect to amend their amended complaint by claiming an additional fact discovered by them in June, 1954, which they didn’t know in 1941-1943 and with knowledge of which, they claim, they cannot he charged prior to 1954. That fact is plaintiffs’ Exhibit “ A ” attached to the affidavit of July 22, 1955, by plaintiff, Gustav Erbe, Jr., which exhibit, plaintiffs claim, they first discovered in 1954. On this motion defendants must assume the truth of the amended complaint except as to the legal conclusions to be drawn therefrom, and likewise the plaintiffs must be confined to the allegations of that pleading. Hence upon this motion, such exhibit is not available to the plaintiffs.
But even if it he held that plaintiffs are entitled to have such exhibit considered on this motion, how does it help them? The exhibit is a memorandum dated August 31, 1940, made by one of the attorneys for the defendant bank as executor, with respect to a meeting held the day before. It recites the financial plight of the estate and the tentatively agreed plan of action for winding up the estate including a proposed conference of all interested parties at which, among other things, a sale of the remaining *421 stock of the estate would be suggested, “ at which sale the bank would undoubtedly be the successful bidder ” and further “ The prices at which the Yawman & Erbe * * * stocks should be bid in was discussed, Mr. Baker’s idea being that the bids should be higher than could possibly be obtained in the open market for the reason that the bank desires the control of Yawman & Erbe through the purchase of its shares ”. The quoted provisions, in the light of infallible hindsight, might suggest a meaning different from that intended in 1940. The schedule in paragraph Twenty-Third of the amended complaint shows that the year 1940 was a low point in the Yawman & Erbe Manufacturing Company’s operations. Presumably no one would pay much for the stock. The bank was a large creditor and was willing to allow against its claims more for the stock than it was then thought to be worth, and take the stock with the hope of later coming out whole. Looking at the situation as it existed at that early date, it is difficult to find the sinister motive which plaintiffs now seek to place thereon.
But even construing the document as plaintiffs would have it, it adds nothing to their complaint. They have alleged fraud by defendant bank to secure control of stock of the estate in Yawman & Erbe Manufacturing Co. Exhibit “ A ”, which in plaintiffs’ view supports this charge, was no new discovery for plaintiffs, because in objection No. 3 of objections filed for Diana Patterson Dobbs, Exhibit “G”, and adopted by plaintiffs Frederick Q-. Erbe, Jr., and Jeanette R. Erbe with approval of the Surrogate, the plaintiffs expressly charge that the executors were not acting in good faith and were seeking to ‘ ‘ secure the control of the Yawman & Erbe Manufacturing Company ”. Thus, the plaintiffs had knowledge equivalent to " discovery ” within the meaning of the statute (Civ. Prac. Act, § 48, subd. 5) in 1941, and cannot now assert such discovery to have occurred in 1954. “ A new cause of action for fraud does not accrue each time a plaintiff discovers new elements of fraud in a transaction or new evidence to prove such fraud.” (Sielcken-Schwarz v. American Factors, 265 N. Y. 239, 245, supra.)
It is held therefore that the Statute of Limitations has run against the plaintiffs with respect to the cause of action pleaded in the amended complaint.
The motions are therefore granted.
Submit judgment accordingly.