**PARAGON INTERNATIONAL, N. V. and Paragon Ventures, N. V., Plaintiffs,**

v.

**STANDARD PLASTICS, INC., et al., Defendants.**

No. 72 Civ. 682.

United States District Court,
S. D. New York.

Jan. 8, 1973.

Willkie, Farr & Gallagher, New York City, for plaintiffs by Jack David, New York City, of counsel.

Meade, Wasserman & Plowden-Wardlaw, New York City, for defendants by James Brachman, New York City, and Walter R. Milbourne, of Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., of counsel.

GURFEIN, District Judge.

The defendants move to dismiss certain counts of the second amended complaint upon the ground of improper venue and to transfer certain other counts to the Eastern District of Pennsylvania pursuant to the provisions of 28 U.S.C. § 1404(a). The plaintiffs move for summary judgment.

The plaintiffs are alleged to be corporations organized in the Netherlands Antilles and established at Curacao: Paragon International, N. V. ("International") and Paragon Ventures, N. V. ("Ventures"). The citizenship of all the defendants is Pennsylvania. Under the venue provisions of the judicial code when jurisdiction is founded only on diversity of citizenship venue lies in the district where all the plaintiffs or all the defendants reside; or, since the 1966 amendment "in which the claim arose." 28 U.S.C. § 1391. No party resides in the Southern District of New York, and, hence, as to the diversity counts, venue can be properly laid here only if this is the District "in which the claim arose."

The complaint is in five counts. The first and third counts sound in breach of contract and seek damages on behalf of International. The second count sounds in breach of contract and apparently seeks specific performance on behalf of Ventures. The third count charges breach of contract and asks damages on behalf of Ventures. The fourth count is alleged to ground jurisdiction on Section 27 of the 1934 Securities and Exchange Act (15 U.S.C. § 78aa) and purports to set forth a claim for relief under Section 10 of the 1934 Act, and Rule 10(b) (5) thereunder. The fifth count sounds in common law fraud and, hence, may be supported jurisdictionally on diversity grounds.

■■ The defendants have moved to dismiss for improper venue only counts two and three. Since venue may be waived by the serving of an answer to a complaint, the defendants have by answering the first amended complaint with respect to the first, fourth and fifth

counts waived any objection to venue on those counts.

Before determining the venue questions that remain (counts two and three) it is necessary to state the operative facts giving rise to these claims variously stated, including the facts in affidavits on the companion motion for summary judgment.

International and Ventures are investment companies in Curacao for whom the investment adviser is Arno Advisory, Inc. which in turn is managed by Arno D. Schefler who has his office in New York City.

In April 1970 Schefler was approached by an investment banker who informed him that Standard Plastics, Inc. ("Standard") was about to commence a private placement of its securities and suggested that International buy some. International already held 8,000 shares of Standard stock. It was arranged that Schefler would meet Paul Sarver, President of Standard in New York, where Sarver in early May 1970 gave Schefler an offering brochure dated April 27, 1970, describing the proposed private placement. The negotiations culminated in the execution of two written agreements dated May 26, 1970, (1) a subscription agreement for 10,000 shares of common stock at $5 per share, executed in the name of "Paragon International, N. V. by Arno Advisory, Inc. by Arno D. Schefler"; and (2) a letter of even date addressed to "Paragon International, N. V., c/o Arno Advisory, Inc. 767 Fifth Avenue, New York" and signed by Standard, and individually by Sarver and by Thomas L. Bamonti, Lewis E. Tremaine, Jr. and William R. Eaton, described as officers of Standard.

The subscription agreement in which International was the subscriber was a purchase agreement and was conditioned on an exception being effective under the Pennsylvania Securities Act.

The check for $50,000 was delivered under the conditions that the subscription would become void unless before June 1, 1970 Standard received a bank loan of not less than $415,000 and there was a full subscription to the shares offered. Standard had until June 15, 1970 to accept the subscription offer and upon acceptance by it both parties would be bound.

The subscriber warranted that he is acquiring the shares entirely for investment and not with a view to distribution and has no present intention of selling, pledging or otherwise disposing of the shares. The subscriber further warranted that he is not acquiring the shares for resale upon occurrence or non-occurrence of some particular predetermined event; and that he knows of no particular circumstances which would make it necessary or expedient for the subscriber to sell any of the shares in the foreseeable future.

The subscriber undertook that he would not sell the shares unless he first furnished to Standard an opinion of counsel that registration is not necessary in the circumstances. A suitable legend was provided for the stock certificates.

Standard undertook to notify the subscriber if within three years from April 27, 1970 it went into registration under the 1933 Act and agreed to use its best efforts to register the subscribers' shares at the latter's option.

Despite its representation that it had no present intention to sell in the subscription agreement, International procured from Standard and its officers the May 26, 1970 letter previously mentioned. That letter stated that "Standard intends to register its stock and that of its shareholders under the Securities Act and for the registration statement to become effective before the end of 1970. In connection with the underwriting with respect to such a registration, Paragon would be able to sell all its shares." It also stated: "If the above is not accomplished by the end of 1970, and if you purchase 10,000 shares of common stock pursuant to Standard's offering brochure dated April 27, 1970, at your request the undersigned officers of Standard, individually or collectively, will buy at $5 per share the 10,000 shares so purchased by Paragon." "This obli-

gation will be collateralized by all the shares in Standard then owned by the undersigned officers."

The complaint alleges that Standard failed to register the shares of its common stock before the end of 1970, that International demanded in writing that the defendant purchase the 10,000 shares at $5 per share pursuant to the May 26 letter; and that the defendants have failed and refused to do so.

The amended complaint also alleges that International in January 1971 sold the 10,000 Standard shares to plaintiff Ventures for $30,000 and assigned its contractual rights to Ventures.

In the first count International seeks damages of $20,000, the difference between the repurchase price of $50,000 and the $30,000 for which it sold the shares. In the second count Ventures alleges that it has tendered through International and continues to tender the shares but that the defendants have refused to repurchase the shares, and that Ventures has no adequate remedy at law. The third count repeats the first two and claims damages for Ventures of at least $50,000. The fourth count is a 10(b)(5) claim based on allegations that the defendants knew when they represented they would register the stock they had no intention of doing so. The fifth count simply repeats the allegations of the first and fourth counts and charges that these alleged acts and practices constitute common law fraud and that International has been damaged in the sum of $20,000.

## VENUE

Although the venue statute provides for venue in the district in which the claim arose, a federal district court sitting in New York cannot decide under some federal common law where the claim arose. It must rely on the state law of the forum. See Ryan v. Glenn, 52 F.R.D. 185, 192 (N.D.Miss.1971). In New York that is not simple. For New York has left the realm of certainty where Professor Beale once ruled and has adopted the more amorphous rules known as "significant contacts" and "interest analysis." See Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954); Intercontinental Planning v. Daystrom, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969). However, the policies and interests which might determine whether New York or Pennsylvania substantive law governs may not necessarily determine where a "claim arose" for venue purposes. Similarly Judge Friendly, when faced with New York's borrowing statute in George v. Douglas Aircraft Co., 332 F.2d 73, 78 (2 Cir. 1964) wrote: " . . . we perceive no obstacle to predicting that the New York Court of Appeals would consider a cause of action as 'arising' for the purposes of the borrowing statute in a state different from the one whose substantive law would determine liability."

In this case the contract is the May 26 letter. This was an offer to enter into a unilateral contract if International performed the act requested, the purchase of 10,000 shares at $5 under the subscription agreement. The offer was sent to International in New York. The act which converted the offer into a contract, the signing of the subscription agreement, took place in New York. In an action involving the breach of a contract made in New York between two foreign corporations the Appellate Division has held that the action "arose" in New York for purposes of Section 225(1) General Corporation Law (now N.Y.B.C.L. § 1314(b)(3), McKinney's Consol. Laws, c. 4, 1972). N. V. Tonerde Maatschappij Voor Montaan-Chemie v. Great Lakes Coal and Coke Co., 243 App.Div. 640, 276 N.Y.S. 895 (2d Dept. 1935).

In the instant case, performance was also to be in New York. Performance, of course, was not due until a request for repurchase was made under the terms of the May 26 letter. This was done by International in a letter written from New York and mailed to the defendant Standard in Pennsylvania on November 19, 1970. International's No-

vember 19, 1970 letter can be construed as an exercise of an option. The First Restatement of Conflicts of Laws § 356 (1) (1934) reads:

"When a contract involves a promise to do one thing or another at the option of either party the place of performance is undetermined until the option is exercised, and it then becomes the place of performing the promise which is chosen by the party having the option."

South American Petroleum Corp. v. Colombian Petroleum Co., 177 Misc. 756, 758, 31 N.Y.S.2d 771 (N.Y.Sup.Ct.1941). Having exercised its option to call for the repurchase of the stock, the plaintiff had the right to determine the place of performance. And although it failed to state where the repurchase price was to be paid it was presumably in New York where the shares were held, where the option was exercised and where the May 26 contract was made. It certainly had the option so to declare. See Liebeskind v. Mexican Light & Power Co., 116 F.2d 971 (2 Cir. 1941).

Accordingly, I find that the claim arose in the Southern District of New York, and that venue lies here.

### MOTION TO TRANSFER—
### 28 U.S.C. § 1404a

■ Since I have concluded, as will appear, that summary judgment must be granted in favor of the plaintiffs, it is unnecessary to consider the arguments advanced by the defendants relating to convenience of witnesses and whether the trial would more conveniently proceed in Philadelphia. In any event in view of the proximity of Philadelphia to New York, there is no reason why, in the interest of justice, the plaintiffs' choice of forum should be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

### MOTION FOR SUMMARY JUDG-
### MENT BY PLAINTIFFS

There is no dispute that the subscription agreement and the May 26 letter constituted valid contracts. Nor is there any dispute that Standard failed to effect a registration or that the obligation to repurchase the shares arose within a reasonable time after December 31, 1970.

The contention of the defendants in resisting summary judgment is that the sale by International to Ventures relieved the defendants of any obligation to repurchase. The arguments are: First, that the sale to Ventures was not preceded by an opinion of counsel rendered to Standard that such sale would not be in violation of the Securities Act; second, that no sale or assignment was permitted as a matter of contract; and third, that when demand was made on the defendants to repurchase the shares by International, that corporation was no longer the owner of the shares. The basic defense to the contract claim by International is, therefore, that it has not only failed to perform all the terms and conditions of the agreement, but that International having materially breached the terms of the offering brochure and the subscription agreement has thereby discharged the individual defendants from their commitment under the May 26 letter.

■ The plaintiffs contend that the May 26 agreement contains no provision barring assignment or transfer. The failure to supply an opinion of counsel is dismissed as irrelevant, and, in any event, unnecessary in the circumstances, for Ventures was a corporation organized by shareholders of International to hold the restricted securities formerly held by International, owned and managed by the same people who owned and managed International.

Neither party has cited a case in point.

The essential question is whether the transfer of shares to an affiliate is the same as a transfer to a third party who is a stranger. The purposes of the registration requirements of the securities acts are scarcely thwarted when the investment remains an asset of the ultimate owners: the same shareholders. The exemption afforded the private

placement assumes that the sophisticated buyers had received enough information by the offering brochure to permit sale without registration. Since the new purchaser was the same group of individuals they had the same knowledge. The requirement that International supply Standard with a letter of counsel seems an unnecessary protection to Standard from being charged with violation of the securities law in these particular circumstances. The failure to supply such a letter in the circumstances is not a material breach.

Nor is there any reason to doubt the assignability of the contract to an affiliate. It is a simple obligation to repurchase. Ordinarily, things in commerce, including contractual obligations and choses in action are freely assignable, unless there is a contractual prohibition against assignment. See Williston, Contracts (Rev.Ed.) § 412.

The contention that when International made the demand for repurchase the demand was ineffective because the shares had already been transferred is not well taken. International remained the record owner. It was authorized by Ventures to make the demand in the name of International. It was in a position to deliver the certificates against payment. The defense is a sham.

In sum, the contentions of the defendants, accepted as true, are no defense to the claim of International on the first claim for relief. Although it would have been better 'for International to have taken an assignment from Ventures of its claim and sued for $50,000, it has not done so. Accordingly, judgment will be rendered against all the defendants and on behalf of International in the sum of $20,000 as demanded.

Since I have held the assignment of the May 22 contractual obligation is valid, judgment will be awarded to Ventures against all the defendants in the sum of $30,000 under count three.

In view of this determination under the contract claims, it is not necessary to consider either the 10(b)(5) claim or the claim based·on common law fraud.

The motion for summary judgment is granted in accordance with the opinion.