**Ramez J. GHAZOUL, Plaintiff,**

v.

**INTERNATIONAL MANAGEMENT SERVICES, INC., et al., Defendants.**

**No. 75 Civ. 1221 (JMC).**

United States District Court, S. D. New York.

July 25, 1975.

Walsh & Frisch, New York City, and Cole, Zylstra & Raywid, Washington, D. C. (Burt A. Braverman, Washington, D. C., of counsel), for plaintiff.

Freziger, Wohl, Finkelstein & Steinmann, New York City (Ronald Gene Wohl, New York City, of counsel), for defendant Spire Capital Services Corp.

## MEMORANDUM DECISION AND ORDER

CANNELLA, District Judge:

Spire Capital Services Corp. [Spire], one of the defendants herein, has moved for the entry of an order pursuant to Fed.R.Civ.P. 12(b)(2)(3)(4) and (5) dismissing the instant cause as against it on the grounds of "lack of jurisdiction over the person"; "improper venue"; "insufficiency of process"; and "insufficiency of service of process". For the reasons indicated below, the motion is hereby denied.

Addressing first Spire's challenge to *personam* jurisdiction, certain well accepted propositions must be noted. The plaintiff has the burden of sustaining an assertion of personal jurisdiction against a challenge. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 8 L.Ed. 1135 (1936); *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1176 (7 Cir. 1971). However, "In deciding a motion to dismiss for lack of personal jurisdiction, it is proper for the Court to rely on affidavits to establish jurisdictional facts," *Lynn v. Cohen,* 359 F.Supp. 565, 566 (S.D.N.Y.1973), and in so proceeding, "we must consider the pleadings and affidavits in the light most favorable to the [plaintiff], who [is] the non-moving party." *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 192–93 (E.D.Pa.1974).

Where "determination of factual disputes central to the assertion of jurisdiction may be dispositive of questions of liability as well [as jurisdiction], the plaintiff need only show 'threshold' jurisdiction sufficient to demonstrate the fairness of allowing the suit to continue. The parties are not bound by the court's jurisdictional findings of fact when the case comes to trial on the merits." *Holfield v. Power Chemical Co.,* 382 F.Supp. 388, 390 (D. Md.1974). Such "threshold jurisdiction" is demonstrated and the requisite burden of proof is satisfied when the plain-

tiff establishes *prima facie* a transaction or other conduct by a defendant which is within the compass of the applicable long-arm statute.[1] *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2 Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). Of course, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2 Cir. 1963) (en banc).

In the present case, plaintiff premises *personam* jurisdiction over Spire on the first two subdivisions of the New York long-arm statute, CPLR 302(a)(1) and (2).

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . .

As we find that Spire is amenable to the jurisdiction of this Court under the "tortious act within the state" provision of the statute, 302(a)(2), we need not consider whether it has also transacted business, 302(a)(1), here.[2]

---

1. In *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5 Cir. 1973), the Fifth Circuit explained the concept stated in the text in the following fashion:

   Plaintiff has the burden of proving that defendant is amenable to process under the forum state's jurisdiction statute. *Tetco, supra*; 5 Wright & Miller, Federal Practice and Procedure § 1351 at 565. Under many state long arm statutes, like that of Texas, amenability to service turns on whether defendant has "done business" or "committed a tort" in the forum; thus the threshold jurisdictional question often puts in issue the facts alleged as a basis for relief. Plaintiff is not, however, required to prove his case by a preponderance of the evidence in order to show that the forum's jurisdictional statute is satisfied. Rather, plaintiff meets his burden by establishing merely a *prima facie* cause of action. *O'Hare International Bank v. Hampton*, 7th Cir. 1971, 437 F.2d 1173; *United States v. Montreal Trust Co.*, 2nd Cir., 358 F.2d 239, *cert. denied* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); 4 Wright & Miller, Federal Practice and Procedure § 1068 at 250. Imposing any greater burden on plaintiff at this early stage would lead to premature and unnecessary adjudications having no *res judicata* effect on the merits. *Thomas v. Furness (Pacific) Ltd.*, 9th Cir. 1948, 171 F.2d 434, *cert. denied*, 337 U.S. 960, 69 S.Ct. 1522, 93 L.Ed. 1759 (1949). [Footnote omitted.]

   *See also, Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490–91 (5 Cir. 1974);

   *Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 259 (8 Cir. 1974); 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1068 at 250 (1969):

   It has been held that when plaintiff is seeking to bring a defendant into court under a long-arm statute, he must state sufficient facts in the complaint to support a reasonable inference that defendant can be subjected to jurisdiction within the state. Since this often requires a showing that a tort has been committed or a contract not performed, plaintiff frequently is obliged to make a presentation that involves the merits of the action in the context of trying to establish jurisdiction. To avoid precipitating too extensive an investigation of the merits at this stage of the litigation, only a *prima facie* showing is required on a jurisdiction motion.

   The court reiterated, however, that if *personam* jurisdiction is again challenged at trial, plaintiff must then prove jurisdictional facts by a preponderance of the evidence. 473 F.2d at 1232 n. 4. Thus, we deny the instant motion without prejudice to renewal at trial.

2. In two recent decisions, the Second Circuit Court of Appeals has summarized and analyzed the law pertinent to CPLR 302(a)(1). *Sterling National Bank and Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870 (2 Cir. 1975) and *Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062 (2 Cir. 1974). A reading of these decisions, together with the New York state court cases on point, causes this

As we have earlier indicated (*See* Memorandum and Order of April 4, 1975), this action was originally commenced by plaintiff against defendant International Management Services [IMS] to recover an amount in excess of $200,000 on two "loans". However, plaintiff subsequently discovered the existence of an allegedly fraudulent transaction between IMS and Spire, which is alleged to have been entered into with the intent of defrauding IMS creditors, such as plaintiff. Thus, in his Second Amended Complaint (to which this motion is addressed (*see* Wohl letter of June 4, 1975)), the plaintiff advances three claims against Spire. These allegations are set out in full text in the margin,[3] and, in summary, Spire is charged with having knowingly participated in conduct (the loan agreement and pledge) undertaken "to delay, hinder and defraud Plaintiff and other creditors of Defendant IMS by means of fraudulent conveyances" which, if established at trial, would constitute tortious action against the plaintiff. More importantly, it is claimed that all defendants conspired or acted in concert with each other to "delay, hinder and defraud" creditors of IMS.

While a civil conspiracy is not of itself actionable under New York law, when alleged conspiratorial conduct rears its head in the context of a personal jurisdiction motion, an interesting animal enters the jurisdictional forest. As the New York Court of Appeals long ago recognized:

> The allegation that there was a conspiracy to commit the fraud does not effect the substantial ground of action. The *gravamen* is fraud and damage, and not the conspiracy. The means by which a fraud is accomplished are

reader to have grave doubts as to whether Spire transacted business in New York in a fashion sufficient to predicate jurisdiction on CPLR 302(a)(1). However, as we find jurisdiction to exist under CPLR 302(a)(2), we do not decide this question.

3. FIFTH CAUSE OF ACTION

24. On information and belief, Defendant IMS has entered into agreement with Defendant Spire whereunder Defendant IMS would borrow from Defendant Spire not less than $150,000 and not more than $300,000 payable, together with interest at the rate of eighteen (18) per cent per annum, on March 15, 1975 unless sooner accelerated, and as collateral security Defendant IMS pledged all of the issued and outstanding capital shares of its subsidiary corporation, Defendant MBM, which shares will be conveyed to Defendant Spire upon the default or bankruptcy of Defendant IMS. Such agreement was made with the knowledge and participation of Defendant MBM.

25. The agreement between Defendants IMS and Spire was entered into without the. consent of a majority of Defendant IMS's stockholders, such consent being necessary for said transaction.

26. The agreement was entered into by Defendant IMS in violation of the terms and provisions of a previous agreement restricting pledges of the stock of Defendant IMS and its subsidiaries.

27. On information and belief, Defendant IMS has defaulted on said loan agreement and the stock of Defendant MBM has been conveyed by Defendant IMS to Defendant Spire.

28. The agreement for the conveyance of stock of Defendant MBM was made and accepted with intend to hinder, delay and defraud the creditors of Defendant IMS, particularly this Plaintiff.

29. By reason of the actual intent of Defendants IMS, MBM and Spire to hinder, delay and defraud the creditors of Defendant IMS, particularly this Plaintiff, the Plaintiff herein is entitled to a reasonable allowance of attorneys fees.

SIXTH CAUSE OF ACTION

30. Repeats and realleges the allegations of Paragraphs 1–27.

31. The loan agreement between Defendants IMS and Spire contemplating the conveyance of stock of Defendant MBM was made without fair consideration.

32. The conveyance of stock of Defendant MBM has rendered or will render Defendant IMS insolvent.

SEVENTH CAUSE OF ACTION

33. Repeats and realleges the allegations of Paragraphs 1–27.

34. Defendants IMS, MBM and Spire have conspired to delay, hinder and defraud Plaintiff and other creditors of Defendant IMS by means of fraudulent conveyances.

immaterial except so far as they tend, in connection with the damage suffered, to show an actionable injury. *The allegation and proof of a conspiracy in an action of this character is only important to connect a defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated.* But a mere conspiracy to commit a fraud is never of itself a cause of action, and an allegation of conspiracy may be wholly disregarded and a recovery had, irrespective of such allegation, in case the plaintiff is able otherwise, to show the guilty participation of the defendant. In other words, the principles which govern an action for fraud and deceit are the same, whether the fraud is alleged to have originated in a conspiracy, or to have been solely committed by a defendant without aid or co-operation. Whenever it becomes necessary to prove a conspiracy in order to connect the defendant with the fraud, no averment of the conspiracy need be made in the pleadings to entitle it to be proved.

*Brackett v. Griswold,* 112 N.Y. 454, 466–67, 20 N.E. 376 (1889) (emphasis in original and supplied).[4] Thus, if the conspiracy alleged by plaintiff in the complaint is proved at trial, then, under well-accepted principles, each co-conspirator stands as agent for the other.

■ Drawing the plaintiff's allegations of conspiracy into line with the present motion, we find

that under certain circumstances a person may be subjected to jurisdiction under CPLR § 302(a)(2) on the theory that his co-conspirator is carrying out activities in New York pursuant to the conspiracy. *American Broadcasting Co. v. Hernreich,* 40 A.D. 2d 800, 338 N.Y.S.2d 146 (1st Dep't 1972) and *Neilson v. Sal Martorano, Inc.,* 36 A.D.2d 625, 319 N.Y.S.2d 480 (2d Dep't 1971).

*Socialist Workers Party v. Attorney General,* 375 F.Supp. 318, 321–22 (S.D. N.Y.1974). *Accord, Lehigh Valley Indus., Inc. v. Birenbaum,* 389 F.Supp. 798, 806–07 (S.D.N.Y.1975). Judge Griesa cautioned, however, that

in order for a plaintiff to subject an out-of-state defendant to jurisdiction in New York, it is necessary to do more than put forward an unsupported allegation. The plaintiff must come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York. *LaMarr v. Klein,* 35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dep't 1970).

*Id.* 375 F.Supp. at 322. *Cf., Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10 Cir. 1972). We find the plaintiff to have done so on the instant motion.

■ The affidavit submitted on behalf of the plaintiff in opposition to this motion states:

Plaintiff became aware that IMS had entered into an agreement with Defendant Spire pursuant to which De-

---

4. *See also, Taylor v. Cowit,* 41 Misc.2d 54, 244 N.Y.S.2d 845, 846 (Sup.Ct.1963), *modified,* 20 App.Div.2d 699, 246 N.Y.S.2d 962 (1 Dept.1964); *Friedlander v. National Broadcasting Co.,* 39 Misc.2d 612, 241 N.Y.S. 2d 477, 481 (Sup.Ct.1963) *rev'd on other grounds,* 20 App.Div.2d 701, 246 N.Y.S.2d 889 (1 Dept.1964); *Erbe v. Lincoln Rochester Trust Co.,* 1 Misc.2d 413, 145 N.Y.S.2d 788, 793 (Sup.Ct.1955), *aff'd,* 2 App.Div.2d 242, 154 N.Y.S.2d 179 (4 Dept.1956), *rev'd on other grounds,* 3 N.Y.2d 321, 165 N.Y.S.2d 107 (1957); *Ippisch v. Moricz-Smith,* 1 Misc. 2d 120, 144 N.Y.S.2d 505 (Sup.Ct.1955), *aff'd*

*as modified,* 1 App.Div.2d 968, 150 N.Y.S.2d 419 (2 Dept.1956) ("While it is true that conspiracy to commit fraud, standing alone, is not actionable and allegations and proof of conspiracy are important only to connect a defendant with the transaction and to charge him with the acts and declarations of his co-conspirators [citations omitted], nevertheless where fraudulent and illegal acts by the conspirators are alleged a cause of action is established." 144 N.Y.S.2d at 508); *Kane v. Harris,* 81 N.Y.S.2d 325, 327 (Sup.Ct. 1948).

fendant Spire was to lend $150,000 to IMS; as collateral security for that loan, IMS was to pledge the shares of its subsidiary McKee-Berger-Mansueto, Inc. (MBM). The agreement, which was finally executed in New York City, was to be performed by Defendant Spire depositing $50,000 to the account of IMS at Barclays Bank in New York City and an additional $50,000 to the IMS account at the Chase Manhattan Bank in New York City; Defendant IMS was to repay Spire on March 15, 1975 at the Two Park Avenue, New York City branch of the Chase Manhattan Bank. The agreement also provided that IMS would pledge as collateral security the shares of its subsidiary McKee-Berger-Mansueto, Inc., a New York corporation; that Spire would have all of the rights and remedies of a secured party under the Uniform Commercial Code of New York; and that the agreement would be construed and enforced in accordance with the laws of the State of New York.

(Braverman Affidavit of May 26, 1975 ¶ 2 at 1–2.) Spire does not dispute the allegations posited above, but rather rests its present plea upon the fact that it has never been in New York (either by officer or agent) and that it fulfilled its role in the subject transaction by means of the mails and by telephone. (*See,* Wohl Affidavit of April 30, 1975 ¶ 2; Lambert Affidavit of June 2, 1975 at 1–2.) Such a stance is, of itself, unavailing because, as the New York Court of Appeals explained in *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340 (1970), "one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in an extensive purposeful activity here without ever actually setting foot in the State." Rather, because plaintiff has

"come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York,"[5] and because the allegations of the complaint, if proved, would allow the finder of the facts to conclude: (1) that there existed a conspiracy to defraud creditors of IMS; (2) that Spire was a member thereof; (3) that the locus of the tort was in New York; and, therefore, (4) that Spire participated in and committed a tortious act within this state by virtue of its own conduct, as well as that of its co-conspirator (agent) IMS, we find that a sufficient nexus between Spire and a New York based tort has been established for purposes of this motion. As the Appellate Division, Second Department observed in *Neilson v. Sal Mortorano, Inc.,* 36 App.Div.2d 625, 626, 319 N.Y.S.2d 480, 482 (2 Dept.1971):

> A trier of the facts could find that the [resident] defendant . . . conspired with [the non-resident defendant] to effect fraudulent conveyances, that [the resident] acted as [the non-resident's] agent in preparing and recording the mortgages and in the payment to [the non-resident] in satisfaction of the mortgages, and that those acts therefore constituted tortious acts in New York.

*See also, American Broadcasting Co. v. Hernreich,* 40 App.Div.2d 800, 338 N.Y. S.2d 146 (1 Dept.1972) ("The acts of Sullivan pursuant to the illegal conspiracy between Sullivan and defendant were the acts of the defendant through his agent, Sullivan, within the meaning of CPLR 302 (subd. [a], par. 2). *Parke-Bernet Galleries v. Franklyn,* 26 N.Y. 2d 13, 18, 308 N.Y.S.2d 337; *De Nigris Assoc. v. Pacific Air Transp. Int.,* 38 A.D.2d 363, 329 N.Y.S.2d 939.").

▮ We conclude, therefore, that although Spire may never have entered New York, the facts before us warrant our finding that plaintiff has established

---

5. *I. e.,* the entry into the contract, the deposit of money to the IMS account with two New York banks and the receipt of the pledge of MBM stock.

"threshold jurisdiction" under CPLR 302(a)(2) by making a *prima facie* showing of facts from which the finder of the facts could reasonably conclude that Spire was a conspirator and thereby participated in a New York based tort. As Justice Steuer said in dissent in *La Marr v. Klein*, 35 App.Div.2d 248, 315 N.Y.S.2d 695, 698–99 (1 Dept.1970), *aff'd mem.*, 30 N.Y.2d 757, 333 N.Y.S.2d 421 (1972), "if he did join in the alleged venture, it would be immaterial both as to liability and jurisdiction over him whether the acts performed by him were carried out in this state, as long as sufficient was done here by other conspirators to confer jurisdiction." *Cf., PPS, Inc. v. Jewelry Sales Representatives, Inc.*, 392 F.Supp. 375, 380 (S.D.N.Y. 1975). The motion to dismiss for lack of *personam* jurisdiction is denied without prejudice to renewal at trial. *See,* n. 1 *supra.*

■ Having concluded that Spire is subject to the Court's jurisdiction, we direct our attention to the propriety of service of process on Spire in the District of Columbia. Fed.R.Civ.P. 4(e) provides that: "Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons . . . upon a party not an inhabitant of or found within the state . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule." *See also,* Fed. R.Civ.P. 4(d)(7). Under New York law, extraterritorial service of process is governed by CPLR 313, which states that

A person . . . subject to the jurisdiction of the courts of the state under section . . . 302 . . . may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized

to make service by the laws of the state, territory, possession or country in which service is made or by any duly qualified attorney, solicitor, barrister, or equivalent in such jurisdiction.

As we have recently stated, "[S]ection 313 provides that . . . service can be made outside of the state with the same effect as service made within the state, in instances where New York jurisdiction is predicated upon, *inter alia,* the long-arm statute." *Zarcone v. Condie,* 62 F.R.D. 563, 567 (S.D.N.Y. 1974). *See generally,* 4 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1112–1115 at 460–73 (1969). A jurisdictional predicate under CPLR 302(a)(2) having been demonstrated by plaintiff (see discussion *supra*), it follows that service of process upon Spire in the District of Columbia was proper under CPLR 313, as that provision is made applicable in this Court by Fed.R.Civ.P. 4(e).

With regard to the last issue raised by Spire, we find that venue is properly placed in this district. The controlling venue statute, 28 U.S.C. § 1391(a), provides that a diversity action, such as this, "may . . . be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." In the instant case, plaintiff premises venue upon the latter formulation—"in which the claim arose" —because (admittedly) there is no federal judicial district wherein all defendants reside and because the plaintiff, an alien, does not reside in any judicial district.

■ The phrase "in which the claim arose" is simpler in its statement than in its operation. *See,* 1 J. Moore, *Federal Practice* ¶ 0.142[5.–2] at 1423– 35 (2 ed. 1974). However, courts faced with the problem of deciding where a claim arises for purposes of venue have fashioned what may be called a "weight

of contacts" approach. "[T]he weight of defendant's contacts in the various districts concerned must be compared, and the claim must be deemed to have arisen in the district where the contacts had been most significant." *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 891 (S.D.N.Y.1974) (and the cases there cited). *See also, Arnold v. Smith Motor Co.,* 389 F.Supp. 1020, 1022–23 (N.D.Iowa 1974); 1 J. Moore, *supra* at 1433–34.[6] As Judge Weinstein has stated: "The cause of action for venue purposes can be said to arise wherever substantial material events took place." *United States ex rel. Flemings v. Chafee,* 330 F.Supp. 193, 194 (E.D.N.Y.1971), *aff'd,* 458 F.2d 544 (2 Cir. 1972), *rev'd on other grounds,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed. 2d 873 (1973).

In the present case, the facts, as developed in the pleadings and affidavits at bar make it manifest that the "weight of contacts" for venue purposes lies in this district. All material events surrounding the IMS-Spire loan transaction —the alleged fraudulent conduct— took place in New York (see *supra,* 312) and defendant IMS resides in this district. That Spire resides in Washington, D.C. and participated in this transaction from its office in that district, is not "significant" in the context of the overall scheme of events and is clearly insufficient to tip the balance of contacts against venue in this district. Venue in the Southern District of New York is proper.

The instant motion is hereby denied.

It is so ordered.

6. The law which the court must invoke in order to decide where a claim arises for venue purposes is the subject of dispute. The cases appear to adopt the view that in diversity situations the courts must look to state law. *See* the cases collected at 1 J. Moore, *supra* at 1429 n. 54 and *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 90 (S.D.N.Y.1974). Judge Gurfein states that "a federal district court sitting in New York cannot decide under some federal common law where the claim arose. It must rely on the state law of the forum." *Paragon Int'l* *N.V. v. Standard Plastics, Inc.,* 353 F.Supp. 88, 91 (S.D.N.Y.1973). The leading commentators vehemently disagree. Wright says, "This view is wholly unacceptable," C. Wright, *Law of Federal Courts* § 42 at 152 n. 23 (2 ed. 1970), and Moore calls it "patently incorrect," 1 J. Moore, *supra* at 1429. As the weight of contacts in the present case is overwhelming, we do not attempt to resolve this controversy, but to the extent that our brethren in this district have spoken, we find no fault with their views.