**CRANSTON PRINT WORKS COMPANY, Plaintiff,**

v.

**BROCKMANN INTERNATIONAL A. G., Brockmann Incorporated, Juergen H. Brockmann, Uwe H. Flato, and Wendy J. Rhodes, Defendants.**

**No. 81 Civ. 1350 (WCC).**

United States District Court, S. D. New York.

July 10, 1981.

Otterbourgh, Steindler, Houston & Rosen, P. C., New York City, for plaintiff; Kurt J. Wolff, New York City, of counsel.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendants, Brockmann Intern. A. G., Brockmann Inc., Juergen H. Brockmann and Uwe H. Flato; Richard L. Bond, Robert J. Kipnees, Susan L. Lesinski, Maura J. Wogan, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This is an action alleging breach of contract and conspiracy to defraud. Defendants Brockmann International A.G. ("BIAG"), Brockmann Incorporated ("Brockmann Inc."), Juergen H. Brockmann ("Brockmann") and Uwe H. Flato ("Flato") have moved to dismiss the amended complaint for lack of jurisdiction over the per-

son, Rule 12(b)(2), F.R.Civ.P., for insufficiency of service of process, Rule 12(b)(5), F.R.Civ.P., and, as to the sixth claim in the amended complaint, for failure to state a claim upon which relief can be granted, Rule 12(b)(6), F.R.Civ.P.

*The Amended Complaint*

According to the amended complaint, plaintiff Cranston Print Works Company ("Cranston") is a Rhode Island corporation qualified to do business in New York, and in fact doing business in New York through two New York divisions, VIP Division ("VIP") and Cranston Print Works U.S.A. Division ("Cranston-USA").

BIAG is a Liechtenstein corporation with its principal place of business in that country and an office in North Carolina. Brockmann Inc. is a North Carolina corporation with its principal place of business in that state. Brockmann is a non-citizen of the United States and is the president and principal shareholder of both BIAG and Brockmann Inc. Flato and Rhodes are alleged to be North Carolina citizens employed by both BIAG and Brockmann Inc.[1]

The amended complaint alleges that, in October 1980 in New York City, Cranston, through VIP, entered into a contract with BIAG whereby BIAG agreed to purchase from Cranston 57,282¼ yards of fabric. Pursuant to the contract, BIAG opened an irrevocable letter of credit at a North Carolina bank in favor of Cranston-USA. Payments under the letter of credit were to be made sixty days after shipment. A subsequent contract between Cranston and BIAG in November 1980, regarding 23,238 yards of fabric, contained the same terms as the October agreement, and BIAG opened a second irrevocable letter of credit at the North Carolina bank in favor of Cranston-USA pursuant thereto.

Counts One through Five of the amended complaint, apparently directed at BIAG,[2] recite the completion of five partial shipments of fabric from Cranston to BIAG pursuant to the October and November 1980 agreement and BIAG's instructions to the North Carolina bank not to pay under the letters of credit despite the passage of sixty days following each of the shipments, and seek damages for breach of the October and November 1980 contracts in the amounts due for the five shipments.

Count Six of the amended complaint, which did not appear in the original complaint, alleges a conspiracy on the part of defendants to defraud Cranston. Although the two contracts prohibited or limited partial shipments, defendants are alleged to have made certain representations to Cranston in New York, which induced Cranston to agree to deliver partial shipments to BIAG. BIAG agreed to instruct the North Carolina bank to amend the letters of credit to allow for payment to Cranston for partial shipments. Cranston seeks damages under Count Six in the amount of $251,-587.97, the total amount claimed to be due in Counts One through Five for completed partial shipments.

*The Contract Claims*

BIAG has moved to dismiss the contract claims—Counts One through Five of the amended complaint—on the ground that personal jurisdiction over it is lacking. BIAG points out that none of the defendants is a New York citizen or resident; that none of them is registered to do, or does, business in New York; and that none of them maintains any office, warehouse, bank account, telephone listing, mailing address, employees, agents or sales representatives in New York. Thus, BIAG persuasively argues, the only conceivable basis for personal jurisdiction over it on the contract

---

**1.** Subsequent submissions indicate that Rhodes is no longer an employee of BIAG or Brockmann Inc., and has not been served with the summons and amended complaint. Apparently Cranston no longer wishes to proceed against Rhodes.

**2.** The original complaint contained only the contract claims and named only BIAG as a defendant. The amended complaint added the conspiracy to defraud claim and the additional defendants. Presumably the contract claims are still directed solely at BIAG, the only defendant that was a party to the October and November 1980 contracts.

claims is N.Y.C.P.L.R. § 302(a)(1), which provides for personal jurisdiction over non-domiciliaries who "transact any business within the state . . . ."

██ In order for Cranston to assert personal jurisdiction over BIAG pursuant to Section 302(a)(1), BIAG must not only have transacted business in New York, but the cause of action must arise out of the business transacted in New York. *E.g., Chertok v. Ethyl Corp. of Canada*, 341 F.Supp. 1251, 1254 (S.D.N.Y.1972). In this regard BIAG points out that the contracts called for no business to be transacted by it in New York. The fabric was apparently to be shipped from Cranston's mill in Massachusetts to Europe. Payment was to be made by letters of credit issued by and presented to the North Carolina bank.

Accordingly, personal jurisdiction hinges upon Cranston's allegation in the amended complaint that Cranston and BIAG entered into the first of the two contracts *in New York City* on October 17, 1980.[3] BIAG, by Brockmann, denies that the October 17 contract was entered into in New York. According to Brockmann, the October 17 contract consisted of a Telex message sent by Brockmann from North Carolina to New York, confirming two orders placed over the telephone that day from North Carolina to New York.

In response, Cranston has sought to detail the history of the two contracts by the affidavits of several of its employees, which in sum set forth the following chronology of events in 1980 and 1981:

| | |
|---|---|
| September 24, 1980 | Telephone call from Brockmann to Cranston-USA (in New York) inquiring as to fabrics, prices and shipping. |
| September 24 | Telephone call from Rhodes to Cranston-USA with more specific inquiries concerning fabrics. |
| Unspecified | Telephone call from Rhodes to Cranston-USA requesting a meeting in New York. |
| October 8 | Meeting in New York attended by Brockmann at which specific contractual terms were discussed in detail. |
| October 17 | Telex from Brockmann to Cranston in New York confirming purchase orders on terms substantially the same as those agreed to at the October 8 meeting. |
| October 22 | Telex from Brockmann to Cranston in New York confirming establishment of first letter of credit at North Carolina bank. |
| October 28 | Telephone call from Rhodes to Crantex, a New York division of Cranston, requesting a meeting in New York to see additional Cranston fabrics. |
| October 29 | Meeting in New York attended by Brockmann and Rhodes at which amendment of the letter of credit to allow Cranston more time for shipment and more room for error regarding quantity, leading to subsequent amendments of the letter of credit. |
| November 1 | Rhodes picked up Cranston fabric samples at Kennedy Airport in New York, apparently while en route from Europe to North Carolina. |
| November 6 | Telex from Brockmann to Cranston in New York confirming second contract on substantially same terms as first contract. |
| November 10 | Telephone call from Rhodes to Cranston in New York requesting shipment of sample fabrics to BIAG, and Telex from Rhodes confirming such. |
| November 11 | Telephone conversation between Brockmann and Cranston regarding assurances that Cranston fabrics would not be resold as piece goods. |
| Unspecified | Telephone call from Brockmann requesting meeting in New York. |
| December 3 and 4 | Meetings in New York attended by Brockmann and Rhodes at which Brockmann requested and Cranston agreed that Cranston would accelerate delivery by making partial shipments, even though such shipments could not properly be made consistent with the restrictions set forth in the letters of credit. |
| January 8, 9, 13 and 20, 1981 | Telexes from defendants to Cranston in New York regarding the completion of shipments under the contracts. |

BIAG's version of these events is, to say the least, different. According to Brockmann,

(1) the October 8 meeting in New York was purely exploratory;

(2) the delivery date, a key item in the substantive dispute between the parties, was set on October 17 and any different projection discussed on October 8 is irrelevant;

(3) the October 29 and December 4 meetings in New York were held for the sole purposes of (a) allowing Brockmann to look at additional fabrics, which were never purchased, and (b) discussing Cranston's inability to meet the shipping deadline;

3. The amended complaint specifies November 20, 1980 as the date of the second contract, but does not allege where the contract was entered into.

(4) BIAG did not seek expedited shipments, but rather Cranston required extensions of time; and

(5) Brockmann never agreed to modify shipping terms in the letters of credit.

 Under Section 302(a)(1), inquiry into the sufficiency of contacts with the forum state turns upon the totality of the defendant's acts within the forum state in relation to the contract, whether preliminary or subsequent to its execution. *Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062, 1064 (2d Cir. 1974); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 433, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (Ct.App.1965), *cert. denied, Estwing Manufacturing Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1966). While plaintiff has the burden of sustaining its assertion of personal jurisdiction, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party. *Freeman v. Gordon and Breach, Science Publishers, Inc.*, 398 F.Supp. 519, 520 (S.D.N.Y.1975).

Here it is apparent that Cranston and BIAG have offered entirely incompatible versions of the events surrounding the two contracts. On the one hand, if Cranston's account of these circumstances is true, then personal jurisdiction over BIAG would appear to be proper under Section 302(a)(1); *i. e.*, if the terms of the contracts were substantially negotiated and agreed upon at the October 8 meeting in New York and then amended at subsequent meetings in New York, each attended by BIAG representatives for such purposes, then it would appear that BIAG has transacted business in New York in relation to the contract claims. See, *e. g., National Spinning Co., Inc. v. Talent Network, Inc.*, 481 F.Supp. 1243, 1246 (S.D.N.Y.1979); *National Iranian Oil Co. v. Commercial Union Insurance Co. of New York*, 363 F.Supp. 129, 132 (S.D.N.Y.1973); *George Reiner and Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (Ct.App.1977). On the other hand, if BIAG's version is accurate—*i. e.*, the October 8 meeting was at most a preliminary discussion and the other meetings

were only incidentally related to the contracts at issue—then Section 302(a)(1) would likely not allow for personal jurisdiction over BIAG on the contract claims. See, *e. g., Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 587 (2d Cir. 1965); *Aero-Bocker Knitting Mills v. Allied Fabrics*, 54 A.D.2d 647, 387 N.Y.S.2d 635, 637 (1st Dept. 1976).

 It also appears that the factual disputes underlying the issue of personal jurisdiction will play a material role in resolving the merits of this dispute; *e. g.*, whether the contracts were intended to reflect the agreement, if any, reached at the October 8 meeting; whether the parties at subsequent New York meetings agreed to amend the contracts; etc. "Where 'determination of factual disputes central to the assertion of jurisdiction may be dispositive of questions of liability as well [as jurisdiction], the plaintiff need only show "threshold" jurisdiction sufficient to demonstrate the fairness of allowing the suit to continue. The parties are not bound by the court's jurisdictional findings of fact when the case comes to trial on the merits'." *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 309 (S.D.N.Y.1975), quoting from *Holfield v. Power Chemical Co.*, 382 F.Supp. 388, 390 (D.Md.1974). This burden may be satisfied by a *prima facie* showing of a transaction sufficient to confer personal jurisdiction. *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *Ghazoul, supra*, at 309–10.

 On this record, I am satisfied that Cranston has made a sufficient *prima facie* showing that the negotiations at the October 8 meeting, and perhaps also at subsequent meetings, were material and substantial in relation to the subject contracts, and that consequently Cranston has made the requisite threshold showing for assertion of personal jurisdiction over BIAG pursuant to Section 302(a)(1). Accordingly, defendants' motion to dismiss Counts One through Five of the amended complaint is denied. The denial of this portion of the motion is with-

out prejudice to renewal of the motion by BIAG following a more complete presentation of the relevant facts at trial.

### The Conspiracy to Defraud Claim

As to the sixth claim, which alleges a conspiracy to defraud Cranston on the part of defendants, defendants have moved to dismiss for lack of personal jurisdiction and for failure to state a claim, raising several arguments in support of both of these. The Court need not address each of these contentions, for it is my conclusion that defendants must prevail on their position that the sixth claim does not state a claim of fraud under New York law, but rather merely restates the contract claims set forth in previous counts. The amended complaint alleges that the parties agreed to amend the contracts at the December 4, 1980 meeting and that BIAG subsequently failed to carry out its part of the bargain by failing to perform according to the agreed upon modifications. This claim manifestly sounds in contract. Cranston's attempt to convert this to a tort claim is based upon the additional naked assertion that BIAG, in furtherance of the alleged conspiracy among defendants, never intended to perform as it promised to do on December 4.

Several courts have rejected such efforts to convert a contract action into a tort claim of fraud based upon just such an allegation that a contracting party never intended to fulfill his promise. See, e. g., *Stanat Manufacturing Co. v. Imperial Metal Finishing Co.*, 325 F.Supp. 794 (E.D.N.Y. 1971); *Brick v. Cohen-Hall-Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937); *Lewis v. Friedman-Marks Clothing Co.*, 70 A.D.2d 866, 418 N.Y.S.2d 60 (1st Dept. 1979); *Miller v. Columbia Records*, 70 A.D.2d 517, 415 N.Y.S.2d 869 (1st Dept. 1979); *Hertz Commercial Leasing Corp. v. LMC Data Inc.*, 73 Misc.2d 1009, 343 N.Y.S.2d 689 (Civ.Ct.N.Y. Co.1973). While New York law recognizes a cause of action for fraud in the inducement of a contract, this claim cannot be based solely upon the failure to perform the promises of future acts which constitute the contractual obligations themselves. See, e. g., *Triangle Underwriters v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979); *Wegman v. Dairylea Cooperative, Inc.*, 50 A.D.2d 108, 376 N.Y.S.2d 728 (4th Dept. 1975).

Accordingly, the sixth claim is dismissed for failure to state a claim upon which relief can be granted.

### Conclusion

The motion to dismiss Count 6 is granted; the motion to dismiss Counts One through Five against BIAG is denied without prejudice.

SO ORDERED.