**Philip CARLUCCI, d/b/a P.C. Waterproofing Co., Plaintiff,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION, et al., Defendants.**

**No. CV 86–1800.**

United States District Court, E.D. New York.

Nov. 4, 1986.

Jerome Cooper, Lynbrook, N.Y., for plaintiff.

Charnin & Trabucci by Aldo A. Trabucchi, Great Neck, N.Y., for defendants RJC Assoc. & Robert & Jeffrey Capazzi.

Friedman & Kaplan by Edward A. Friedman and Eric Seiler, New York City, for defendant Owens-Corning.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Philip Carlucci, d/b/a P.C. Waterproofing Co. ("Carlucci") brings this litigation against defendants Owens-Corning Fiberglas Corporation ("Owens-Corning"), RJC Associates, Inc. ("RJC"), Robert Capazzi, and Jeffrey Capazzi, and "John Doe, Individually and John Doe Corporation, Being One Or More Defendants Whose Names Are Presently Unknown." Plaintiff alleges that certain actions taken by defendants violated the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 2, 3, 13, 15, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, Articles 22 and 33 of the New York General Business Law, N.Y.Gen. Bus.L. §§ 340–47, 680–95, and the common law of the State of New York. Owens-Corning now moves for an order pursuant to Fed.R.Civ.P. 9(b) and 12 dismissing certain counts of plaintiff's complaint for failure to state a claim and allege fraud with particularity.

### I.

■ This case is currently before the Court upon a motion to dismiss. The material allegations of plaintiff's complaint, along with such reasonable inferences as might be drawn in plaintiff's favor, must therefore at this time be taken as admitted. *Gargiul v. Tompkins*, 704 F.2d 661 (2d Cir.1983), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Murray v. City of Milford*, 380 F.2d 468 (2d Cir.1967). The Court may dismiss the counts of the complaint against which Owens-Corning now moves only if it is clear that no relief could be granted for these claims under any set of facts that could be proved consistent with the complaint's allegations. *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Furthermore, the Court is restricted on defendant's motion to evaluating the legal sufficiency of the pleadings. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion such as defendant's is addressed to the face of the pleadings and the Court may look only within the four corners of the complaint or to statements or documents attached as exhibits to or clearly incorporated by reference in the pleadings. Fed. R.Civ.P. 10(c); *Goldman v. Belden*, 754 F.2d 1059 (2d Cir.1985); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774 (2d Cir.1984).

In accordance with these principles, the Court takes its statement of the facts relevant to Owens-Corning's motion from Carlucci's complaint. In or about October, 1985, Carlucci contacted a Harrison, New Jersey office of Owens-Corning to inquire as to whether plaintiff might be designated a distributor or contractor authorized to purchase and resell "Tuff-n-'Dri," a waterproofing material developed, manufactured, and sold by Owens-Corning for application to exterior concrete foundations. Carlucci asserts that, after extensive discussions held in Suffolk County, New York, plaintiff was advised that he had been approved as a distributor or contractor for Tuff-n-Dri, and, in or about November, 1985, purchased certain equipment and apparatus required to conduct business operations employing the waterproofing material. Also in or about November, 1985, plaintiff ordered, paid for, and received from Owens-Corning approximately five hundred gallons of Tuff-n-Dri.

Shortly after the acceptance of plaintiff's order for Tuff-n-Dri, Owens-Corning purportedly contacted Carlucci on several occasions and advised plaintiff that his resale price, which was below that of other Owens-Corning distributors and contractors, was too low. Carlucci nonetheless continued to sell at the lower price. On November 21, 1985, Owens-Corning terminated plaintiff's status as a distributor or contractor, allegedly because of an unlawful agreement between Owens-Corning, RJC, which is an Owens-Corning distributor and contractor, Robert and Jeffrey Capazzi, and unnamed others "already, or about to be, engaged in the Owens-Corning program relating to" Tuff-n-Dri. This supposed agreement between defendants and others

is designed to control the price, sale, distribution, and application of Tuff-n-Dri in New York City, Nassau and Suffolk Counties, the State of New York, and the United States. Carlucci further asserts that Owens-Corning terminated plaintiff as a distributor or contractor not at its own behest, but upon the insistence of· RJC, Richard and Jeffrey Capuzzi, and unnamed others.

Plaintiff's complaint contains six counts. Count I constitutes an antitrust claim. Count II alleges a fraudulent scheme to control the exterior concrete foundation waterproofing market, an ongoing pattern of racketeering activity, and a conspiracy, and seeks that defendants be held liable for treble damages under RICO. Count III states a claim for breach of contract, while Count IV alleges violation of the New York Franchise Sales Act, N.Y.Gen.Bus.L. §§ 680–95. Count V asserts that RJC and Robert and Jeffrey Capazzi intentionally, maliciously, and wrongfully caused Owens-Corning to breach its agreement with Carlucci. Count VI sounds in fraud. Owens-Corning's motion is addressed to Counts II, IV, and VI.

## II.

The Court will first turn to Owens-Corning's contention that Count VI of the complaint, plaintiff's common-law fraud claim, should be dismissed. Owens-Corning bases its argument for dismissal of Count VI upon two grounds, namely, that Carlucci has failed to allege fraud with the particularity required by Fed.R.Civ.P. 9(b) and that, in any event, the complaint does not allege facts sufficient to state a cause of action sounding in fraud.

Carlucci's complaint contains allegations of a number of purportedly fraudulent actions by Owens-Corning. Owens-Corning, for instance, supposedly falsely advised plaintiff that it would assist Carlucci in establishing a market for Tuff-n-Dri and explain to Carlucci the manner in which Tuff-n-Dri should be applied. Additionally, Owens-Corning allegedly falsely advised plaintiff as to the number of installations of Tuff-n-Dri Carlucci might expect to make and made other misrepresentations designed to induce plaintiff into entering into an agreement with Owens-Corning and expending money and energy on the formulation of business operations. Owens-Corning also assertedly made other "untrue and misleading statements," omissions of "material fact," and "false and misleading representations" that are not further specified in the complaint.

■ Fed.R.Civ.P. 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Mere conclusory allegations of fraudulent or deceptive behavior are insufficient to satisfy Rule 9(b). *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114–15 (2d Cir. 1982). As the Second Circuit noted in *Segal v. Gordon,* 467 F.2d 602 (2d Cir.1972), it is a serious matter to charge a defendant with fraud, and a court should not allow allegations of fraud to stand unless a plaintiff is both in a position to and willing to put himself on record as to the specific nature of the fraud. 467 F.2d at 607 (quoting 1A W. Barron & A. Holtzoff, *Federal Practice and Procedure* § 302, at 215–16 (Wright rev. 1960)). Allegations of fraud sufficient to comply with Rule 9(b) must set forth matters such as the time, place, and contents of purportedly false representations, as well as the identity of persons making such representations. *Luce v. Edelstein,* 802 F.2d 49 (2d Cir.1986); *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038 (S.D.N.Y.1986); *Robertson v. National Basketball Association,* 67 F.R.D. 691, 697 (S.D.N.Y.1975). Furthermore, allegations of fraud resting on nothing more than "information and belief" are generally inadequate under Rule 9(b) and, even when such allegations pertain to matters peculiarly within the adverse parties' knowledge, Rule 9(b) requires that the allegations be accompanied by a statement of facts upon which the asserted "information and belief" is founded. *Luce,* 802 F.2d at 54 n. 1; *Segal,* 467 F.2d at 608; *The Limited, Inc.,* 645 F.Supp. at 1042.

█ Consideration of Carlucci's complaint in light of these principles leads to the inexorable conclusion that plaintiff's allegations of fraud are insufficient. The allegations contained in the complaint are pled almost entirely upon "information and belief" and are nothing but conclusory. Plaintiff has completely failed to identify any particular persons making false representations or provide any specifics as to the time or place at which the supposed misrepresentations were made. The contents of the assorted misrepresentations too have been set forth in only the most general of manners, and no statement of facts discloses the bases of plaintiff's belief that Owens-Corning acted fraudulently. The Court therefore finds that plaintiff's complaint fails to satisfy the requirements of Rule 9(b).[1]

█ Failure to comply with Rule 9(b) ordinarily results, not in outright dismissal, but in an order that a plaintiff amend his complaint so as to conform with the Rule. *Luce,* 802 F.2d at 56–57; *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 562 (2d Cir.1985). In fact, dismissal of a complaint for failure to satisfy Rule 9(b) without granting leave to amend may, under certain circumstances, be deemed a reversible abuse of discretion. *Luce,* 802 F.2d at 56–57. Owens-Corning argues, however, that the granting of such leave to amend the fraud claim in the instant case is unnecessary since the factual situation alleged by Carlucci is not one that could support a claim of fraud even if the specificity that the complaint is currently lacking were to be supplied.

The crux of plaintiff's allegations that Owens-Corning acted fraudulently is Carlucci's contention that, by making false representations and statements and omitting to tell Carlucci of certain material facts, Ow-

ens-Corning induced plaintiff to enter into an agreement with Owens-Corning regarding the use of Tuff-n-Dri, which Owens-Corning did not intend to honor unless Carlucci went along with certain pricing and other restrictions that were not part of the agreement and purportedly in violation of antitrust laws. As plaintiff states in, for example, Paragraphs 27, 53 and 54 of the complaint:

27. Owens-Corning, by its agents, servants, employees or representatives, made fraudulent representations to the Plaintiff as part of the contractual arrangement whereby the Plaintiff became a distributor and/or contractor in respect of the Material [Tuff-n-Dri].

53. Upon information and belief, at the time such representations and statements were made, they were known by Owens-Corning, by its agents, servants, employees and/or representatives, to be false, and were, upon information and belief, made with the intent to deceive and defraud the Plaintiff and to induce him to divert his then customers to accept and use the Material, purchase and/or acquire various items of equipment, paraphernalia and other apparatus for use in connection with the purchase and application by the Plaintiff of the Material, promote the Material in the market then being served by the Plaintiff and otherwise injure and damage him.

54. At the time the false representations and statements were made by Owens-Corning, the Plaintiff did not know the true facts, but believed the representations and statements were true, relied upon them and was thereby induced to take the action set forth above and enter into an agreement with Owens-Corning

---

1. In Carlucci's papers in opposition to Owens-Corning's motion, plaintiff attempts to buttress his position that he has satisfied Rule 9(b)'s requirement of particularity by referring to his answers to interrogatories propounded by Owens-Corning and to a telephone conversation with an Owens-Corning employee and attaching a purported transcript of the conversation as an exhibit to his papers. The interrogatory an-

swers and telephone conversation must be deemed irrelevant to the Court's consideration of defendant's motion, however, since, as the Court has noted above, *supra* § I, upon a motion to dismiss, the Court may properly look only within the four corners of the complaint or to statements or documents attached as exhibits to or clearly incorporated by reference in the pleadings.

in respect of the distribution, sale, installation and application of the Material.[2]

Owens-Corning correctly points out that a claim predicated upon a breach of a contractual arrangement cannot be converted into a fraud claim simply by allegations that a defendant never intended to adhere to its obligations under the agreement. *Cranston Print Works Co. v. Brockmann International A.G.*, 521 F.Supp. 609, 614 (S.D.N.Y.1981); *Stanat Manufacturing Co. v. Imperial Metal Finishing Co.*, 325 F.Supp. 794, 796 (E.D. N.Y.1971); *Miller v. Columbia Records*, 70 A.D.2d 517, 415 N.Y.S.2d 869, 871 (1st Dep't), *appeal dismissed*, 48 N.Y.2d 629, 421 N.Y.S.2d 192, 396 N.E.2d 474 (N.Y. 1979). Such allegations must be supported by the pleading of specific facts tending to show that, at the time the defendant made the asserted representations and promises, it never intended to honor its stated intentions. *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F.Supp. 912, 924–25 (S.D.N.Y. 1984); *Roney v. Janis*, 77 A.D.2d 555, 557, 430 N.Y.S.2d 333, 335 (1st Dep't 1980), *affirmed*, 53 N.Y.2d 1025, 442 N.Y.S.2d 484, 425 N.E.2d 872 (N.Y.1981). While New York law recognizes a cause of action for fraud in the inducement of a contract, such a claim cannot be based solely upon allegations that the defendant failed to perform acts that constitute the contractual obligations themselves. *Cranston Print Works*, 521 F.Supp. at 614; *Wegman v. Dairylea Corporation, Inc.*, 50 A.D.2d 108, 376 N.Y.S.2d 728, 734–35 (4th Dep't 1975), *appeal dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976).

Plaintiff's complaint, as it stands, does not adequately plead the facts necessary under New York law to support its fraud claim. This deficiency, however, is essentially rooted in the same failure sufficiently to detail plaintiff's allegations of fraud that causes Carlucci's complaint to run afoul of Rule 9(b). Accordingly, the Court concludes, despite Owens-Corning's

position that outright dismissal of Carlucci's fraud claim is warranted, that plaintiff should be afforded the opportunity to amend his complaint in an attempt better to meet the requirements of both Rule 9(b) and the substantive common law of fraud. Plaintiff shall serve and file an amended complaint within twenty days of the entry of this Order or face dismissal of his fraud claim. In amending his complaint, Carlucci should make sure to bear in mind at all times the obligations that Fed.R.Civ.P. 11 places upon litigants and their attorneys.

### III.

Owens-Corning grounds its motion to dismiss Count II of the complaint, plaintiff's RICO claim, upon a number of bases. First, Owens-Corning argues that the RICO count is predicated upon allegations of fraud and, therefore, since plaintiff's complaint fails to satisfy the substantive requirements of fraud under New York law, must be dismissed. Second, Owens-Corning asserts that Count II of the complaint, no less than Count VI, does not meet Rule 9(b)'s requirement of particularity. The Court does not disagree with Owens-Corning that plaintiff's RICO claim is deficient in these respects and, ordinarily, would order that the RICO count be amended for the reasons the Court has discussed in the previous section of this opinion. Such amendment of the fraud allegations contained in Count II of Carlucci's complaint, however, would merely result in a waste of the parties' resources, as plaintiff's claim under RICO falls afoul of at least one of the requisite elements mandated by the RICO statute itself.

Although RICO was designed primarily as a criminal statute, § 1964 of the act provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962." The various subsections of § 1962 prohibit a number of activities, but have in common the requirement that the barred activity

---

**2.** Paragraphs 53 and 54 are two of the five substantive paragraphs that comprise Count VI of plaintiff's complaint. Paragraph 51 of the complaint incorporates many of the complaint's preceding allegations, including Paragraph 27, as part of Count VI.

involve either a "pattern of racketeering activity" or "collection of an unlawful debt." [3] Carlucci has nowhere alleged the improper collection of any debts; the question thus becomes whether plaintiff's allegations that Owens-Corning engaged in a "pattern of racketeering activity" are sufficient to state a cause of action under RICO. Owens-Corning argues that the actions plaintiff has imputed to it do not constitute a "pattern" and thus are not actionable under the statute.

§ 1961, RICO's definitional section, declares that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." § 1961(5). In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court discussed RICO's "pattern" requirement in a lengthy footnote, observing that while § 1961(5)'s definition of "pattern of racketeering activity" requires at least two predicate acts of racketeering, it should not be interpreted to mean that the commission of two such acts automatically establishes the existence of a "pattern" in a given case. "The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern'." — U.S. at —, n. 14, 105 S.Ct. at 3285 n. 14.

A number of courts throughout the country have addressed the nature of RICO's pattern requirement in light of *Sedima*. These courts have tended to focus on the number of acts allegedly undertaken, the number of parties aggrieved or victimized by such acts, and number and nature of the transactions or schemes involved. *Northern Trust Bank O'Hare N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985), for instance, held that two acts of mail fraud in furtherance of a single construction kickback scheme did not establish a "pattern" for RICO purposes where the predicate acts consisted solely of the mailing of a contract and the separate mailing of a kickback check. The court stated, " '[P]attern'.... connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity*, not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudu-

**3.** § 1962 reads:

*§ 1962. Prohibited activities*

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section. Carlucci has not specified the particular subsection of § 1962 upon which he bases this lawsuit.

lent acts, as a 'pattern of racketeering activity'." 615 F.Supp. at 831. The Eighth Circuit subsequently explicitly adopted the reasoning and conclusion of *Northern Trust Bank/O'Hare N.A.* in *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986), ruling that a single isolated fraudulent gas conversion scheme was insufficient to constitute a pattern. Likewise, *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418 (W.D.Okl. 1985), held that neither an engagement to perform one bank audit nor a series of related allegedly false and misleading communications made in the course of a single scheme qualified as patterns of racketeering activity under RICO.

Post-*Sedima* cases decided in the Eastern District of New York have taken similar tacks in confronting RICO's pattern requirement. *Rojas v. First National Bank National Association*, 613 F.Supp. 968 (E.D.N.Y.1985), is typical of such cases. In *Rojas*, Judge McLaughlin ruled that the use of the telephone and mails to further an allegedly fraudulent scheme arising out of two discrete loan transactions did not constitute a pattern. In addressing the pattern issue, Judge McLaughlin stated, "Several isolated acts .... do not a pattern make." 613 F.Supp. at 971 n. 1.

Judge Weinfeld of the Southern District of New York has just this past September surveyed the approach to the pattern prerequisite employed by courts within the Second Circuit. In *Bear Creek Productions, Inc. v. Saleh*, 643 F.Supp. 489 (S.D. N.Y.1986), Judge Weinfeld wrote:

> Since Sedima, lower courts have sought to refine the notions of relationship and continuity to develop a meaningful definition of "pattern." On the one hand, they have held that the predicate acts must share sufficient facts in common that they satisfy the requirement of "relatedness." On the other hand, the acts must not be too closely related, because they would then not suggest there is a threat of continuing criminal activity. As noted in Richter v. Sudman, "the issue is not the continuity of a single activity, but whether the defendants had a practice of engaging in the same or similar types of activity." [634 F.Supp. 234, 240 (S.D.N. Y.1986) ]. Thus, numerous cases in this circuit, examining the question at length, have held that where the criminal acts alleged form a single scheme, they do not constitute a "pattern of racketeering activity." [4]

Judge Weinfeld concluded that the facts presented in *Bear Creek Productions* did not support a cause of action under RICO. The parties had entered into an agreement concerning the financing and production of a documentary film on homeless children. According to the plaintiffs' complaint, the original written contract, various oral agreements, and an amendment to the contract were based on certain misrepresentations made by the defendants. However, as Judge Weinfeld pointed out, these alleged misrepresentations all concerned a single transaction. Any frauds committed were therefore part of a single scheme and single purportedly fraudulent transaction and, as such, did not give rise to a civil action under RICO.

 It should be clear from this brief discussion of various courts' analyses of the pattern requirement that Carlucci's complaint does not set forth a viable RICO claim. Owens-Corning's alleged misrepresentations each relate to the single agreement assertedly entered into by Carlucci

---

4. In support of his conclusion as to the position taken by courts within the Second Circuit, Judge Weinfeld cited *Furman v. Cirrito*, No. 82–4428, slip op. at 15 (S.D.N.Y. March 12, 1986 [Available on WESTLAW, DCTU database]); *Crummere v. Brown*, No. 85–1376, slip op. at 8–9 (S.D.N.Y. April 3, 1986 [Available on WESTLAW, DCTU database]); *Frankart Distribs., Inc. v. R.M.R. Advertising, Inc.*, 632 F.Supp. 1198 (S.D.N.Y.1986); *Richter v. Sudman*, 634 F.Supp. 234, 240 (S.D.N.Y.1986); *Soper v. Simmons Int'l Ltd.*, 632 F.Supp. 244, 250–55 (S.D.N.Y.1986); *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860, 863 (S.D.N.Y.1986); and *Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188, 1199 (S.D.N.Y.1985). *But see Conan Properties, Inc. v. Mattell, Inc.*, 619 F.Supp. 1167 (S.D.N.Y.1985) (two related acts arising out of same scheme do constitute pattern).

and Owens-Corning and Owens-Corning's purported failure to live up to its obligations under the agreement. There can be no real question that any fraudulent activities engaged in by defendants were merely individual components of a single scheme that allegedly deprived plaintiff of his status as a distributor or contractor of Tuff-n-Dri. The complaint contains no allegations regarding any other transactions between the parties and fails to allege any specific actions, be they fraudulent or otherwise, that might reasonably demonstrate a pattern and an ongoing practice of interaction with Tuff-n-Dri distributors or contractors in a manner violative of the RICO statute.[5]

The scenario presented by the case at bar is thus a far cry from situations that have led courts to find the pattern of racketeering activity necessary to maintain a RICO claim. *See, e.g., In Re Energy Systems Equipment Leasing Securities Litigation,* 642 F.Supp. 718, 741 (E.D.N.Y.1986) (pattern found where plaintiffs alleged activity consisting of thousands of fraudulent transactions over course of time involving large class of victims and entailing numerous mailings and telephone communications); *Alexander Grant & Co. v. Tiffany Industries, Inc.,* 770 F.2d 717 (8th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986) (thirty predicate acts with allegations demonstrating similar purposes, results, participants, victims, and methods of commission constitute pattern). Plaintiff's contention to the contrary, it is anything but irrelevant whether the fraudulent acts constituting the RICO claim arose out of one transaction or several different transactions. Plaintiff's RICO

claim is rooted in actions purportedly taken in connection with a single scheme involving a single transaction that affected a single allegedly aggrieved party. Such a claim fails to state a cause of action and must be dismissed.[6]

### IV.

Count IV of Carlucci's complaint seeks damages for alleged violation of the New York Franchise Sales Act ("Franchise Act"). N.Y.Gen.Bus.L. §§ 680–95. § 691 of the Franchise Act creates a civil remedy for persons injured in connection with the purchase of a franchise. § 681(3) declares a "franchise" to be:

> a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> (a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, and the franchisee is required to pay, directly or indirectly, a franchise fee, or
>
> (b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate, and the franchisee is required to pay, directly or indirectly, a franchise fee.

. . . . .

---

**5.** Nearly all of the allegations contained in Carlucci's eighteen page, fifty four paragraph complaint concern defendants' activities solely in relation to Carlucci. The few allegations that might be read to imply that defendants engaged in similar purportedly improper activities with regard to distributors or contractors besides Carlucci are completely unsupported by any specific factual assertions and are patently insufficient to justify denial of Owens-Corning's motion to dismiss the RICO claim on the ground that defendants might conceivably have

engaged in a "pattern" of fraudulent representations to Tuff-n-Dri distributors or contractors.

**6.** The Court's holding that plaintiff has failed to meet RICO's "pattern of racketeering activity" requirement obviates the necessity to consider Owens-Corning's further arguments that Carlucci (a) has not made a necessary distinction between the "persons" charged with liability under RICO and the RICO "enterprise" involved, and (b) has not properly alleged a conspiracy to commit a RICO violation.

A "franchisee" is defined as, unsurprisingly, "a person to whom a franchise is granted," while a "franchisor" is "a person who grants a franchise," § 681(4), (5). A "franchise fee":

> means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay directly or indirectly for the right to enter into a business under a franchise agreement or otherwise sell, resell or distribute goods, services, or franchises under such an agreement, including, but not limited to, any such payment for goods or services.

§ 681(7). The Act, however, specifically excludes purchases or agreements to purchase goods at a bona fide wholesale price from categorization as franchise fees. § 681(7)(a).

Owens-Corning moves to dismiss Count IV on the ground that plaintiff has failed to allege facts asserting any payment that might be considered a franchise fee under the Act. In his papers opposing Owens-Corning's motion, plaintiff does not directly dispute this failure. Rather, Carlucci argues that he was under no duty specifically to plead the payment of a franchise fee, that whether a franchise fee was paid is a question of fact to be determined at trial, and that the alleged payment to Owens-Corning for the five hundred gallons of Tuff-n-Dri is sufficient to satisfy the Act's requirement that a franchise fee be paid. Carlucci also contends that his purchase of specialized equipment in connection with the distributorship may be considered the payment of a franchise fee.

■ Plaintiff's position is completely unsupportable. In order to state a cause of action, a complaint obviously must at least allege facts indicating the presence of each element of the substantive law underlying a claim. Such a requirement constitutes the bare minimum necessary for a pleader to make a showing that he is entitled to the relief he seeks. *See* Fed.R. Civ.P. 8(a), 12(b). Plaintiff has totally failed to allege the existence of any payment that might properly be deemed a franchise fee. Plaintiff's payment to Owens-Corning was unquestionably, under the facts Carlucci himself has alleged, simply a wholesale payment for a shipment of Tuff-n-Dri that plaintiff wished to purchase and resell. Plaintiff has nowhere alleged that the price Owens-Corning charged Carlucci was not its wholesale price, nor has Carlucci alleged that the price charged was not absolutely bona fide. As for the specialized equipment plaintiff purportedly purchased, this clearly cannot qualify as a franchise fee with relation to Owens-Corning, as there is no allegation that any of this equipment was purchased from Owens-Corning. Accordingly, Count IV of Carlucci's complaint must be dismissed.

### V.

For the reasons stated above, it is hereby ordered that Owens-Corning's motion to dismiss is granted to the extent that:

1. Plaintiff shall serve and file within twenty (20) days of the entry of this Order an amended complaint stating with greater particularity the specifics underlying his allegations of fraud. Failure to serve and file such an amended complaint within this time period will result in dismissal of plaintiff's fraud claim.

2. Plaintiff's RICO claim is dismissed.

3. Plaintiff's claim under the New York Franchise Sales Act is dismissed.

SO ORDERED.